BUCK v. COLBATH.

1. A suit prosecuted in the State courts to the highest court of such State, against a marshal of the United States for trespass, who defends himself on the ground that the acts complained of were performed by him under a writ of attachment from the proper Federal court, presents a case for a writ of error under the 25th section of the Judiciary Act,

when the final decision of the State courts is *against* the validity of the authority thus set up by the marshal.

2  The case of *Freeman* v. *Howe* (24 Howard, 450)—an action of replevin—decided that property held by the marshal under a writ from the Federal court, could not be lawfully taken from his possession by any process issuing from a State court; and decided nothing more.

3  The ground of that decision was that the possession of the marshal was the possession of the court, and that pending the litigation, no other court of merely concurrent jurisdiction, could be permitted to disturb that possession.

4. An action of trespass, for taking goods, does not come within the principle of that case, inasmuch as it does not seek to interfere with the possession of the property attached; but it involves the question, not raised in that case, of the extent to which the Federal courts will protect their officers in the execution of their processes.

5. With reference to this question, all writs and processes of the courts, may be divided into two classes:

   i. Those which point out specifically the property or thing to be seized.

   ii. Those which command the officer to make or levy certain sums of money, out of property of a party named.

6. In the first class the officer has no discretion but must do precisely what he is commanded.   Therefore, if the court had jurisdiction to issue the writ, it is a protection to the officer in all courts.

7  But in the second class the officer must determine for himself whether the property which he proposes to seize under the process, is legally liable to be so taken, and the court can afford him no protection against the consequences of an erroneous exercise of his judgment in that determination.  He is liable to suit for injuries growing out of such mistakes in any court of competent jurisdiction.

8. A plea, therefore, which does not deny that the property seized was the property of the plaintiff, or aver that it was liable to the writ under which it was seized, is bad in any court.

9  The rule that among courts of concurrent jurisdiction, that one which first obtains jurisdiction of a case has the exclusive right to decide every question arising in the case, is subject to some limitations; and is confined to suits between the same parties, or privies, seeking the same relief or remedy, and to such questions or propositions as arise ordinarily and properly in the progress of the suit first brought; and does not extend to all matters which may by possibility become involved in it.

COLBATH sued Buck in one of the State courts of Minnesota, in an action of *trespass* for taking goods.  Buck pleaded in defence, that he was *marshal of the United States* for the District of Minnesota, and that having in his hands a writ of attachment against certain parties whom he named, he levied

the same upon the goods, for taking which he was now sued by Colbath. *But he did not aver that they were the goods of the defendants in the writ of attachment.*

On the trial Colbath made proof of his ownership of the goods, and Buck relied *solely on the fact that he was marshal* and held the goods under the writ in the attachment suit.

The court refused to instruct the jury that the defence thus set up was a sufficient one; and the plaintiff had a verdict and judgment. This judgment was affirmed on error in the Supreme Court of Minnesota, and the defendant brought the case here under the 25th section of the Judiciary Act; an act which, as most readers will remember, provides that a final judgment in any suit in the highest court of a State where is drawn in question " the *validity of an authority exercised under the United States,* and the decision is *against* its validity," may be reviewed in this court.

*Mr. Peckham, for the marshal, plaintiff in error,* contended that the question whether the fact of his office, set up by the marshal, was or was not a sufficient defence to the suit brought against him, had been settled in the affirmative by the case of *Freeman* v. *Howe* in this court.* In that case White sued a railway company in the Federal court and the marshal attached a number of rail-cars: seizing and taking them into his own possession. While thus in his custody, the sheriff, under process from one of the State courts, sought to take them out of his possession *under a writ of replevin.* The marshal, in the replevin suit, set up by way of defence the authority under the Federal court by which he held the property; in other words, that he held it *as* marshal of the United States. And this court held that a sufficient defence.

If the present action were replevin instead of trespass it cannot be doubted that the plaintiff below would fail. The fact that the suit is one of trespass makes no difference. The thing has nothing to do with forms of action. The court, we may almost say, so declared in *Freeman* v. *Howe.*

---

* 24 Howard, 450.

Quoting a former case in this court,* and declaring specifically that they " *agree*" to it, they say :

" It is a doctrine of law too long established to require citation of authorities, that where a court has jurisdiction it has a right to settle every *question* which occurs *in the case* . . . and that where the jurisdiction of a court and the right of a plaintiff to prosecute his suit in it have once attached, that right cannot be *arrested* or taken away by proceedings in another court."

Now, this question whether the property which the marshal seized, was or was not liable to the attachment, does occur " in the case." It springs immediately out of it. A suit against him in a State court for a trespass in taking the property does, moreover, in effect " arrest"—for it obstructs and hinders—the proceedings in the Federal court. It subjects the marshal and those under whose directions he acts to the annoyance of a multiplicity of actions in various jurisdictions for things springing out of the same " question."

Independently of which, trespass and replevin are universally concurrent remedies for taking goods as these have been taken. To hold that this action was properly brought and not overrule *Freeman* v. *Howe,* would be to hold that the marshal had the right to take these goods and was yet liable for a trespass ; was bound to hold them, and yet should suffer for the detention.

The principles, we suppose, upon which *Freeman* v. *Howe* went were these :

1. That where the officers of a court, State or national, have taken possession of a *res,* under process of attachment or execution, as the property of the defendant in such process, such *res* is in the custody of the law, and the possession of such officers or court is exclusive.

2. That the question, whether such *res,* so seized as the property of the defendant in the process, is rightfully seized by the marshal as the property of the defendant in the process, or otherwise subject to the exigency of the writ, is one

---

* Peck *v.* Jenniss, 7 Howard, 624.

of jurisdiction, the authority to decide which belongs exclusively to the court issuing the process; or, in the language of this court, the "*question* is one of right and title to the property under the Federal process, and which belongs to the Federal, not the State courts to determine."

There was nothing new in these principles. *Hogan* v *Lucas,*[*] and *Taylor* v. *Caryl,*[†] asserted the first; and other cases[‡] assert in effect the second.

The last principle was thus stated by Marshall, C. J., in *Slocum* v. *Mayberry:*

"If the officer has a right under the United States to seize for a supposed forfeiture, the *question,* whether that forfeiture has been actually incurred, belongs exclusively to the Federal courts, *and cannot be drawn to another forum.*"

It was argued, in *Day* v. *Gallup,*[§] that a State court would have jurisdiction to try the question *after* the case in the Federal court was concluded, and thus no longer pending, and the question had not therein been raised or decided. But the argument is not sound. If a court has "exclusive" jurisdiction to decide "every question which occurs in the case," other courts cannot be trying these questions either at the same time or at any other.

Neither is there any hardship or inconvenience in the law as we assert it. The fact—if it *be* a fact, as is probable—may be objected, that the marshal and Colbath, the two parties to this suit, are citizens of the same State; that the question, whether these goods belonged to Colbath or not, and whether Buck, the marshal, was or was not a trespasser, was not in issue in the attachment suit, out of which the suit below sprung; and that, being citizens of the same State, Colbath could not sue the marshal in the Federal court, nor ever have the question of trespass decided in that jurisdiction to which we say that the question exclusively belongs.

---

[*] 10 Peters, 400.                    [†] 20 Howard, 583.

[‡] Slocum *v.* Mayberry, 2 Wheaton, 1; and Peck *v.* Jenniss, 7 Howard 624.

[§] 2 Wallace, 113

The same sort of objection was made in *Freeman* v. *Howe*. It was there argued by counsel for the defendant in error that the plaintiffs in the replevin suit were remediless in the Federal courts, both parties being citizens of the same State. But the court says "that this is a misapprehension, and that a bill in equity may be filed to restrain or regulate the suit at law, and to prevent injustice or an inequitable advantage; such bill being supplementary to the original suit, and maintainable without reference to the citizenship of the parties." It says, moreover, "In a proceeding *in rem*, any person claiming an interest in the property paramount to that of the libellant, may intervene by way of defence for the protection of his interest;" and adds, that "the same is equally true of a proceeding by attachment."

Colbath had, therefore, a complete means of righting himself in the Federal court; which was first seized of the case; which knew its history from the beginning; and which, from the extent of its knowledge in the matter, and from having all parties before it, was best able to do full and complete justice to all concerned.

*Mr. Carlisle, contra, for Colbath, defendant in error,* replied ably to these positions. The full and very luminous manner in which the whole subject is handled by the court, deciding in favor of the cause maintained by Mr. Carlisle, dispenses, however, with the necessity of presenting this gentleman's arguments, or of remarking more than that along with them he suggested, not pressing it strongly, a point of jurisdiction. On that point he observed that the pleadings presented a single issue: whether the goods taken were the goods which the marshal was authorized to take under the process which he held? The pleadings did not admit that the Federal process in the hands of the marshal authorized or purported to authorize him to take the goods of Colbath. Nor did they question or deny his authority to take the goods of the *defendants* named in the writ. On the contrary, they plainly admitted this authority, and limited the plaintiff's ground of action to the abuse of that authority,

and to the misapplication of it to subjects not purporting to be comprehended or affected by it. It was nothing to the purpose, Mr. Carlisle observed, that the marshal did the act complained of by *color* of his office and of process in his hands, if that process did not purport to authorize the act.

Here, then, was not drawn in question " the *validity* of an authority exercised under the United States." The Federal process was admitted to be valid in the case in which it was issued. It was, therefore, not a case within the provisions of the 25th section of the Judiciary Act.

*Day* v. *Gallup*, which closely resembled this case (being an action of trespass under like circumstances), was dismissed for want of jurisdiction; although the taking complained of plainly appeared to have been upon process of execution, issued out of the Federal court, it being held that no case under the 25th section necessarily presented itself upon the record.

Mr. Justice MILLER delivered the opinion of the court.

There seems to be no reason to doubt that the case comes within the provisions of the 25th section of the Judiciary Act. The defendant claimed the protection of " an authority exercised under the United States," and the decision was against the protection thus claimed; or, in other words, against the validity of that authority, as a protection to him in that action. Whether the authority which he thus set up was valid to protect him, is a question for this court to decide finally, and is properly before us under the writ of error to the Supreme Court of Minnesota.

Upon the merits of the case, the plaintiff in error relies mainly on the case of *Freeman* v. *Howe*, decided by this court, and upon the opinion by which the court sustained the decision.

That was a case like this in every particular, with the single exception, that when the marshal had levied the writ of attachment on certain property, a writ of replevin was instituted against him in the State court, and the property

taken out of his possession; while in the present case the officer is sued in trespass for the wrongful seizure.

In that case it was held, that although the writ of attachment had been wrongfully levied upon the property of a party not named in the writ, the rightful owner could not obtain possession of it by resort to the courts of another jurisdiction.

It must be confessed that this decision took the profession generally by surprise, overruling, as it did, the unanimous opinion of the Supreme Court of Massachusetts—a court whose opinions are always entitled to great consideration—as well as the opinion of Chancellor Kent, as expressed in his Commentaries.*

We are, however, entirely satisfied with it, and with the principle upon which it is founded; a principle which is essential to the dignity and just authority of every court, and to the comity which should regulate the relations between all courts of concurrent jurisdiction. That principle is, that whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being; and that no other court has a right to interfere with that possession, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises. This is the principle upon which the decision of this court rested in *Taylor* v. *Caryl*,† and *Hogan* v. *Lucas*,‡ both of which assert substantially the same doctrine.

A departure from this rule would lead to the utmost confusion, and to endless strife between courts of concurrent jurisdiction deriving their powers from the same source; but how much more disastrous would be the consequences of such a course, in the conflict of jurisdiction between courts whose powers are derived from entirely different sources, while their jurisdiction is concurrent as to the parties and the subject-matter of the suit.

---

* Vol. i, 410.          † 20 Howard, 583.          ‡ 10 Peters, 400.

This principle, however, has its limitations; or rather its just definition is to be attended to. It is only while the property is in possession of the court, either actually or constructively, that the court is bound, or professes to protect that possession from the process of other courts. Whenever the litigation is ended, or the possession of the officer or court is discharged, other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not. The effect to be given in such cases to the adjudications of the court first possessed of the property, depends upon principles familiar to the law; but no contest arises about the mere possession, and no conflict but such as may be decided without unseemly and discreditable collisions.

It is upon this ground that the court, in *Day* v. *Gallup*, held that this court had no jurisdiction of that case. The property attached had been sold, and the attachment suit ended, when the attaching officer and his assistants were sued, and we held that such a suit in the State court, commenced after the proceedings in the Federal court had been concluded, raised no question for the jurisdiction of this court.

It is obvious that the action of trespass against the marshal in the case before us, does not interfere with the principle thus laid down and limited. The Federal court could proceed to render its judgment in the attachment suit, could sell and deliver the property attached, and have its execution satisfied, without any disturbance of its proceedings, or any contempt of its process. While at the same time, the State court could proceed to determine the questions before it involved in the suit against the marshal, without interfering with the possession of the property in dispute.

How far the courts are bound to interfere for the protection of their own officers, is a question not discussed in the case of *Freeman* v. *Howe*, but which demands a passing notice here. In its consideration, however, we are reminded at the outset, that property may be seized by an officer of the court under a variety of writs, orders, or processes of the court

For our present purpose, these may be divided into two classes:

1. Those in which the process or order of the court describes the property to be seized, and which contain a direct command to the officer to take possession of that particular property. Of this class are the writ of replevin at common law, orders of sequestration in chancery, and nearly all the processes of the admiralty courts, by which the *res* is brought before it for its action.

2. Those in which the officer is directed to levy the process upon property of one of the parties to the litigation, sufficient to satisfy the demand  gainst him, without describing any specific property to be thus taken. Of this class are the writ of attachment, or other mesne process, by which property is seized before judgment to answer to such judgment when rendered, and the final process of execution, elegit, or other writ, by which an ordinary judgment is carried into effect.

It is obvious, on a moment's consideration, that the claim of the officer executing these writs, to the protection of the courts from which they issue, stands upon very different grounds in the two classes of process just described. In the first class he has no discretion to use, no judgment to exercise, no duty to perform but to seize the property described. It follows from this, as a rule of law of universal application, that if the court issuing the process had jurisdiction in the case before it to issue that process, and it was a valid process when placed in the officer's hands, and that, in the execution of such process, he kept himself strictly within the mandatory clause of the process, then such writ or process is a complete protection to him, not only in the court which issued it, but in all other courts.

And in addition to this, in many cases the court which issued the process will interfere directly to protect its officers from being harassed or interfered with by any person, whether a party to the litigation or not. Such is the habitual course of the court of chancery, operating by injunction against persons who interfere by means of other courts.

And instances are not wanting, where other courts have in a summary manner protected their officers in the execution of their mandates.

It is creditable, however, to the respect which is paid to the process of courts of competent jurisdiction in this country, that the occasion for the exercise of such a power is very rare.

In the other class of writs to which we have referred, the officer has a very large and important field for the exercise of his judgment and discretion. *First*, in ascertaining that the property on which he proposes to levy, is the property of the person against whom the writ is directed; *secondly*, that it is property which, by law, is subject to be taken under the writ; and *thirdly*, as to the quantity of such property necessary to be seized in the case in hand. In all these particulars he is bound to exercise his own judgment, and is legally responsible to any person for the consequences of any error or mistake in its exercise to his prejudice. He is so liable to plaintiff, to defendant, or to any third person whom his erroneous action in the premises may injure. And what is more important to our present inquiry, the court can afford him no protection against the parties so injured; for the court is in no wise responsible for the manner in which he exercises that discretion which the law reposes in him, and in no one else.

In the case before us, the writ under which the defendant justified his act and now claims our protection, belongs to this latter class. Yet the plea on which he relied contains no denial that the property seized was the property of plaintiff, nor any averment that it was the property of either of the defendants in the attachment suit, or that it was in any other manner subject to be taken under that writ.

Seizing upon some remarks in the opinion of the court in the case of *Freeman* v. *Howe*, not necessary to the decision of that case, to the effect that the court first obtaining jurisdiction of a cause has a right to decide every issue arising in the progress of the cause, and that the Federal court could not permit the State court to withdraw from the former the

decision of such issues, the counsel for plaintiff in error insists that the present case comes within the principle of those remarks.

It is scarcely necessary to observe that the rule thus announced is one which has often been held by this and other courts, and which is essential to the correct administration of justice in all countries where there is more than one court having jurisdiction of the same matters. At the same time, it is to be remarked that it is confined in its operation to the parties before the court, or who may, if they wish to do so, come before the court and have a hearing on the issue so to be decided. This limitation was manifestly in the mind of the court in the case referred to, for the learned judge who delivered the opinion, goes on to show, that persons interested in the possession of the property in the custody of the court, may, by petition, make themselves so far parties to the proceedings as to have their interests protected, although the persons representing adverse interests in such case do not possess the qualification of citizenship necessary to enable them to sue each other in the Federal courts. The proceeding here alluded to is one unusual in any court, and is only to be resorted to in the Federal courts, in extraordinary cases, where it is essential to prevent injustice, by an abuse of the process of the court, which cannot otherwise be remedied. But it is not true that a court, having obtained jurisdiction of a subject-matter of a suit, and of parties before it, thereby excludes all other courts from the right to adjudicate upon other matters having a very close connection with those before the first court, and, in some instances, requiring the decision of the same questions exactly.

In examining into the exclusive character of the jurisdiction of such cases, we must have regard to the nature of the remedies, the character of the relief sought, and the identity of the parties in the different suits. For example, a party having notes secured by a mortgage on real estate, may, unless restrained by statute, sue in a court of chancery to foreclose his mortgage, and in a court of law to recover a judgment on his notes, and in another court of law in an

action of ejectment to get possession of the land. Here in all the suits the only question at issue may be the existence of the debt mentioned in the notes and mortgage; but as the relief sought is different, and the mode of proceeding is different, the jurisdiction of neither court is affected by the proceeding in the other. And this is true, notwithstanding the common object of all the suits may be the collection of the debt. The true effect of the rule in these cases is, that the court of chancery cannot render a judgment for the debt, nor judgment of ejectment, but can only proceed in its own mode, to foreclose the equity of redemption by sale or otherwise. The first court of law cannot foreclose or give a judgment of ejectment, but can render a judgment for the payment of the debt; and the third court can give the relief by ejectment, but neither of the others. And the judgment of each court in the matter properly before it is binding and conclusive on all the other courts. This is the illustration of the rule where the parties are the same in all three of the courts.

The limitation of the rule must be much stronger, and must be applicable under many more varying circumstances, when persons not parties to the first proceeding are prosecuting their own separate interests in other courts.

The case before us is an apt illustration of these remarks. The proceeding in the attachment suit did not involve the question of the title of Colbath, defendant in error, to the property attached. The whole proceeding in that court, ending as it might in a judgment for the plaintiff, an execution and sale of the property attached, and satisfaction thereby of the plaintiff's debt, may be, and in such cases usually is, carried through without once requiring the court to consider the question of title to the property. That is all the time a question between the officer, or the purchaser at his sale, on the one side, and the adverse claimant on the other. There is no pretence, nor does any one understand, that anything more is involved or concluded by such proceedings, than such title to the property as the defendant in attachment had when the levy was made.

Hence it is obvious that plaintiff in error is mistaken when he asserts that the suit in the Federal court drew to it the question of title to the property, and that the suit in the State court against the marshal could not withdraw that issue from the former court. No such issue was before it, or was likely to come before it, in the usual course of proceeding in such a suit.

It is true, that if under the intimations in *Freeman* v. *Howe*, the claimant of the property had voluntarily gone before that court and asked by petition that the property be released from the attachment and restored to his possession, he might have raised such issue, and would have been bound by its decision. But no such application was made, no such issue was in fact raised, and no such issue belonged ordinarily to the case. We see nothing therefore in the mere fact that the writ issued from the Federal court, to prevent the marshal from being sued in the State court, in trespass for his own tort, in levying it upon the property of a man against whom the writ did not run, and on property which was not liable to it.

JUDGMENT AFFIRMED WITH COSTS.