## LEROUX and Another *v.* HUDSON, Assignee.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

Argued November 6th, 7th, 1883.—Decided December 10th, 1883.

*Bankruptcy—Conflict of Laws—Equity—Jurisdiction—Statutes.*

1. A marshal of the United States, who, under a provisional warrant in bankruptcy, has, after receiving a bond of indemnity under General Order No. 13, in bankruptcy, seized goods as the property of the debtor, and been sued for damages for such seizure, in an action of trespass in a State

court, by a third person, who claimed that the goods were his property at the time of the seizure, cannot maintain a suit in equity in a circuit court of the United States, for an injunction to restrain the further prosecution of the action of trespass, the parties to the suit in equity being citizens of the same State.

2. Such marshal having delivered the goods seized to the assignee in bankruptcy appointed, after an adjudication of bankruptcy, in the proceeding in which the provisional warrant was issued, and the assignee having sold the goods, under the order of the court in bankruptcy, without giving to the plaintiff in the action of trespass any notice, under § 5063 of the Revised Statutes, of the application for the order of sale or of the sale, and such plaintiff not having brought any action against the assignee to recover the goods, or applied to the bankruptcy court for the proceeds of sale, and the assignee not being sued in the action of trespass, he cannot bring a suit in equity in a circuit court of the United States, joining the marshal as plaintiff, against the plaintiff in the action of trespass, to have the title to the goods determined, on the allegation that they were transferred to such plaintiff in fraud of the bankruptcy act, and for an injunction restraining the prosecution of that action.

Bill in equity to restrain the prosecution of an action in the State courts of Michigan, against the assignee of a bankrupt and the marshal of the Eastern District of Michigan, for entering on the premises of Leroux and removing goods claimed by the assignee to be the property of the bankrupt, and to quiet the title to said goods in the assignee. The material facts were as follows:

On the 14th of March, 1878, proceedings in involuntary bankruptcy were instituted in the District Court of the United States for the Eastern District of Michigan, against Samuel Schott and Philip Feibish, composing the firm of Schott & Feibish. On the same day a warrant was issued by the court to the marshal, under § 5024 of the Revised Statutes, commanding him "to take possession provisionally of all the property and effects of the debtors." The petitioning creditors gave a bond of indemnity to the marshal, under Order No. 13 of the General Orders in Bankruptcy, and required him to seize, under the warrant, as the property of the debtors, certain goods in the hands of Joseph P. Leroux and Max Schott, composing the firm of Leroux & Co., then in the store of the latter at Bay City, Bay County, Michigan, which goods the creditors al-

leged had been transferred to J. Leroux & Co. by Samuel Schott and Feibish, in violation of the bankruptcy law. The seizure was made on the 29th of March by the marshal, Salmon S. Matthews, assisted by his deputies, Myron Bunnell and Horace Becker. An adjudication of bankruptcy was made against Samuel Schott and Feibish on the 13th of April. On the 22d of April J. Leroux & Co. commenced an action of trespass in the Circuit Court for Bay County, Michigan, against Matthews, Bunnell and Becker, to recover $25,000 damages for the acts of the defendants, on the 29th of March, in breaking and entering the store at Bay City and injuring the same, and taking therefrom and carrying away goods of the value of $25,000, the property of the plaintiffs, and converting the same to their own use, and preventing the plaintiffs, for three days, from carrying on their lawful business in the store. On the 6th of May Joseph L. Hudson was appointed assignee in bankruptcy of Samuel Schott and Feibish, and became duly vested with that office. Thereupon the marshal delivered the goods to the assignee, and the latter took possession of them as part of the estate of the bankrupts. The defendants in the trespass suit appeared therein by attorney and demanded a trial, and served a notice of defence, setting up the issuing of the provisional warrant, the seizure of the goods thereunder, the fact that they were the goods of Samuel Schott and Feibish, the adjudication in bankruptcy, the appointment of an assignee, and the fact that the goods had been turned over by the marshal to the assignee, and were held by him as a part of the estate of the bankrupts. At a term of the State Circuit Court, in September following, on application of the defendants, the trial of the suit was postponed to the next term, on affidavit of the illness and absence of an important witness.

In October, 1878, Hudson (the assignee), Matthews (the marshal), and Bunnell and Becker filed a bill in equity, in the Circuit Court of the United States for the Eastern District of Michigan, against Leroux and Max Schott, setting forth the substance of the above facts, and alleging that the goods had been sold by the assignee under the order of the bankruptcy court; that he was holding the proceeds to be applied as a part

of the estate of the bankrupts, if the title should be found to be in the assignee, or he should be entitled to the said assets as assignee and to distribute the same as part of the estate; and that he had the proceeds in hand awaiting the determination of that question. The bill also alleged that the goods were transferred by the bankrupts, when insolvent, to Leroux and Max Schott, with a view to prevent them from coming to the assignee in bankruptcy, and a large part of them within three months before the filing of the petition in bankruptcy, and when Leroux and Max Schott knew that the transfer was made with a view to prevent the goods from going to the assignee, and to prevent them from being distributed under the bankruptcy act, to defeat its object and to injure and delay its operation and evade its provisions; that the transfers of the goods were, therefore, void, and the title to them became vested in the assignee; that he claimed that by reason of the suit in the State court he was unable to proceed with the settlement of the estate of the bankrupts; that the funds so received by him for the goods must be kept until the question in reference to their title should be determined; and that the question in regard to the fraud on the bankruptcy act, so attempted, could not be litigated and determined in the State court. The bill then set forth various matters intended to show the existence of such fraud, and prayed that Leroux and Max Schott be enjoined from further prosecuting their suit, or any other suit, in a State court, for damages in regard to the goods seized by the marshal, and that if they should claim any interest therein they should proceed to establish their claim in the Circuit Court of the United States or in the District Court in bankruptcy. It also prayed that any sale or transfer of the goods from the bankrupts to Leroux and Max Schott be set aside and decreed to be in violation of the bankruptcy act, and that the goods be decreed to be a part of the estate of the bankrupts, and that the title of the assignee to the goods or the funds arising therefrom be quieted and decreed to be perfected in him. In November following, on notice and after a hearing, the court granted a preliminary injunction in accordance with the prayer of the bill. Each of the defendants demurred

separately to the bill for want of jurisdiction and want of equity. The demurrers were overruled, on a hearing. Each of the defendants then answered separately. The answers maintained the right of the defendants to proceed with the suit in the State court, and averred that they owned the goods at the time of the seizure, and denied the equity of the bill. Proofs were taken in the cause on both sides. At the close of the plaintiffs' proofs, the defendants entered on the record a protest against the jurisdiction of the court, with a statement that, by bringing the suit in the State court, they had not sought in any manner to interfere with the goods seized, but had waived the question of interference with the goods. A decree was entered adjudging that the goods were, at the time of their seizure, a part of the estate of the bankrupts; that the title thereto vested in the assignee; that the sale or transfer of them to the defendants was in violation of the bankruptcy act, and should be set aside; that the title of the assignee to the goods and their proceeds be quieted and declared to be perfect; and that the defendants be perpetually enjoined according to the prayer of the bill. From this decree the defendants appealed.

*Mr. Don M. Dickinson* for the appellants.

*Mr. H. C. Wisner* for the appellees.—I. The circuit court has jurisdiction to entertain, hear and determine the case presented by the bill, as to the title of the assignee to the goods; R. S. § 4979; R. S. § 630; *Allen* v. *Massey*, 17 Wall. 351; *Ex parte Schwab*, 98 U. S. 240.—II. The evidence shows that the property belonged to the estate of the bankrupts, at the time of the seizure.—III. The circuit court having found and adjudged the property in question to belong to and to be a part of the estate in bankruptcy of which complainant Hudson is assignee, that court has the power to stop all further litigation upon that question between appellant and the marshal. *Ex parte Christy*, 3 How. 292; *Peck* v. *Jenness*, 7 How. 612; this delegation of power to the federal courts is in terms so broad that they are enabled to reach and determine *every question* in any way materially affecting the successful work-

ing out of the system. And having such power, which in other words is jurisdiction, and having adjudged questions by virtue of it, and decreed what shall be done, its power to enforce that decree by any necessary writ or process must be undoubted. *French* v. *Hay*, 22 Wall. 259; *Dietzsch* v. *Huidekoper*, 103 U. S. 494. The answer made to this, however, is, that the suit in the State court having been commenced before the bill was filed in this case, that court first acquired jurisdiction of the parties and subject-matter, and hence cannot be interfered with by any other court, and in support of this answer *Peck* v. *Jenness*, 7 How. 612, and like cases are cited. These suits, if prosecuted to judgment, may result in a decision contrary to that of the circuit court, and the marshal be called upon to pay for the property. Before being concluded years may intervene in a litigation through the system of State courts, thence to this court. *Sharpe* v. *Doyle*, 102 U. S. 686.

*Mr. Wm. F. Cogswell* for the appellees.—I. The transfer of the goods was fraudulent, both at common law, the statute of frauds of Michigan and the bankruptcy law. There has never been a time since Twyne's case that these transactions would not be held fraudulent.—II. The court had ample jurisdiction to adjudge the transfers fraudulent, and that the property belonged to the assignee, and to restrain the vexatious actions brought against its officers in the State courts. The act of March 3d, 1793, 1 Stat. 334, is not applicable to this case, because the injunction asked for is authorized by law, and relates to proceedings in bankruptcy. R. S. § 720.

Mr. Justice BLATCHFORD delivered the opinion of the court. After reciting the foregoing facts, he said:

This suit divides itself into two branches—the case of the assignee, and that of the marshal and his deputies. The assignee was not a party to the trespass suit. The plaintiffs in that suit, abandoning all pursuit of the goods and all action against the assignee, brought and continued their suit for damages against the marshal and his deputies. They did not disturb the possession of the goods in the assignee, or claim the

proceeds of the goods. Although the bill states that the assignee, on applying to the bankruptcy court for an order to sell the goods, made known to it the facts as to the claim of Leroux and Max Schott thereto, it is not averred that any notice was given to them of the intention to sell or of the sale. It is provided as follows by § 5063 of the Revised Statutes :

"Whenever it appears to the satisfaction of the bankruptcy court that the title to any portion of an estate, real or personal, which has come into the possession of the assignee, or which is claimed by him, is in dispute, the court may, upon the petition of the assignee, and after such notice to the claimant, his agent or attorney, as the court shall deem reasonable, order it to be sold under the direction of the assignee, who shall hold the funds received in place of the estate disposed of ; and the proceeds of the sale shall be considered the measure of the value of the property, in any suit or controversy between the parties, in any court. But this provision shall not prevent the recovery of the property from the possession of the assignee by any proper action commenced at any time before the court orders the sale."

The failure to give any notice to Leroux and Max Schott of the application for the order to sell the goods, although the facts as to their claim were laid before the bankruptcy court, and the fact that no suit was brought against the assignee to recover the possession of the goods from him, are evidence that the bankruptcy court and the assignee did not regard, and could not regard, the case as one where, under § 5063, the title to the goods was in dispute. It was not in dispute as between Leroux and Max Schott of the one part and the assignee of the other part. The former abandoned the goods and all claim to them or to their proceeds, and the assignee acted on that view in selling the goods without notice. They relied solely on their suit in trespass, and the defendants in that suit relied for protection, in case of adverse result, not on the goods or their proceeds, but on the bond of indemnity which the petitioning creditors had given to the marshal. Under these circumstances, after pleading in the suit in the State court, and procuring a postponement of the trial, the defendants in that suit

and the assignee joined in bringing the bill in equity. Had the Circuit Court of the United States any cognizance of the suit? There was no common interest between the assignee and the other plaintiffs. The assignee was not sued in the State court. When the suit in equity was brought, the marshal had no interest in the goods, and no right to rely on them or their proceeds for indemnity, and no right to look to the assignee for protection. The marshal turned the goods over to the assignee, and did so voluntarily, so far as appears, relying on the bond of indemnity as his protection, and substituting that in place of a retention of the goods, when he might well have insisted on retaining them, if Leroux and Max Schott still claimed title to them, inasmuch as the suit in trespass was brought before the goods were turned over to the assignee.

An assignee in bankruptcy has, by § 5129, the right, in case of a transfer of property to a person not a creditor of the bankrupt, in violation of that section, to " recover the property or the value thereof, as assets of the bankrupt." Here the assignee had the property, and there was no occasion for him to bring a suit to recover it.

By § 4979, a circuit court of the United States has jurisdiction of a suit " at law or in equity brought by an assignee in bankruptcy against any person claiming an adverse interest, or by any such person against an assignee, touching any property or rights of the bankrupt transferable to or vested in the assignee." The jurisdiction invoked by the assignee in this case cannot be maintained under § 4979. It does not appear by the bill or the proofs that the defendants claim an interest in the proceeds of the goods adverse to the interest which the assignee claims in such proceeds. When the bill was filed the goods had been sold and were represented by their proceeds in the hands of the assignee. The only interest which the assignee then had touching the goods or in their proceeds was his claim to own those proceeds as assignee. No interest could be adverse to such interest of his unless it was another claim to own or receive those proceeds. The defendants made no such claim. The bill does not allege that they did, but it and the proofs show that from the time they brought the trespass suit they

never disputed the right of the assignee to deal with the goods and their proceeds as a part of the assets of the estate. Nor is the bill filed to remove a cloud on the title to real estate or to set aside written instruments of title which might interpose obstacles to the rights of the assignee in the goods or their proceeds.

It is enacted by § 630 of the Revised Statutes "that the circuit court shall have jurisdiction in matters in bankruptcy, to be exercised within the limits and in the manner provided by law." This refers to the limitations in § 4979. As the bill avers that all the parties are citizens of Michigan, the jurisdiction of the circuit court in this case must be given by the bankruptcy statute, or it does not exist. We are of opinion, upon full consideration, that it is not so given, notwithstanding what was said by this court in *Ex parte Schwab*, 98 U. S. 240.

It may, moreover, be said, that if there were jurisdiction by the citizenship of the parties, a bill such as this, by the assignee in bankruptcy, to obtain such relief as he asked in respect to his own rights, would not lie, he being in possession, and his right to assert possession and ownership and to control and dispose of the property and its proceeds not being questioned or threatened.

As regards the marshal and his deputies, apart from the assignee, there is nothing in the bankruptcy statute which authorizes them to invoke the action of the circuit court, for any relief by injunction in respect to the suit for trespass. As the assignee had no right conferred by that statute to bring the suit in equity in respect to any claim of his own, he had no right as assignee to bring it in respect to any claim of his co-plaintiffs, nor had all together any right conferred by that statute to bring it. The relief sought by injunction depends wholly, as the bill is framed, on the right of the assignee, as such, to maintain the suit in respect to his own case.

If the case as to the marshal and his deputies were one of jurisdiction by citizenship of the parties, it would fall within the principles laid down by this court in *Buck* v. *Colbath*, 3 Wall. 334. The provisional warrant being one merely com-

manding the marshal to seize the property of the debtors, it was for the marshal to determine for himself whether the goods seized were legally liable to seizure under the warrant, and the circuit court could afford him no protection against the consequences of an erroneous exercise of his judgment in that determination. He was liable to suit in any court of competent jurisdiction, for injuries growing out of his mistakes. The State court in which the suit for trespass was brought was such a court, and that suit was an appropriate suit. The parties bringing it were entitled to proceed with that suit in that forum. As was said in *Buck* v. *Colbath*, there was nothing in the mere fact that the provisional warrant issued from a federal court, "to prevent the marshal from being sued in the State court, in trespass, for his own tort, in levying it upon the property of a man against whom the writ did not run, and on property which was not liable to it. This view was reaffirmed in *Sharpe* v. *Doyle*, 102 U. S. 686, and was there applied to a seizure under a provisional warrant in bankruptcy like that in the present case.

We have limited our decision to the precise questions presented in this case, without attempting to define the cases in which an assignee in bankruptcy can maintain a suit under § 5129 or under § 4979, or to specify what relief by injunction can be granted to him under the bankruptcy act, in a proper case.

*The decree of the circuit court is reversed, and the cause is remanded to that court, with direction to dismiss the bill.*

SCHOTT *v.* HUDSON, Assignee, differs from Leroux's case, only in the following immaterial respects: The goods seized were in the hands of Max Schott, in his store at East Saginaw, Saginaw County, Michigan; and had been transferred to him by the debtors. The marshal, Matthews, assisted by John E. Wells, a deputy, seized them on March 29th, 1878. Max Schott, on the 6th of April, commenced an action of trespass in the Circuit Court for Saginaw County, Michigan, against Matthews and Wells, to recover $25,000 damages for the acts of the de-

fendants in breaking and entering the store at East Saginaw, and taking therefrom and carrying away goods of the plaintiffs of the value of $20,000, and converting the same to their own use, and preventing the plaintiffs from carrying on their lawful business in the store. After the defendants in the trespass suit had appeared therein by attorney, and demanded a trial, and given the like notice of defence as was given in the suit for trespass brought by J. Leroux & Co., nothing further was done in the suit. In October, 1878, Hudson (the assignee), Matthews (the marshal), and Wells filed a bill in equity, in the Circuit Court of the United States for the Eastern District of Michigan, against Max Schott, making the like allegations, *mutatis mutandis*, as to the goods taken from Max Schott, as were made in the bill filed by J. Leroux & Co., in regard to the goods taken from them, and containing a like prayer for relief and for an injunction. Like proceedings took place, except that a demurrer was embodied in the answer instead of being filed separately. The answer was of a like character, the proofs and protest were identical, and a like decree was entered, from which the defendant appealed. The same questions are involved as in *Leroux* v. *Hudson*, the facts are substantially the same, and the same conclusions are reached.

*The decree of the circuit court is reversed, and the cause is remanded to that court, with direction to dismiss the bill.*