## BERMAN v. SMITH.

(District Court, N. D. Georgia, W. D.   July 31, 1909.)

1. BANKRUPTCY (§ 295*)—OFFICERS OF BANKRUPTCY COURT—MISCONDUCT—ACTIONS.

An action may be brought in the state courts to recover damages for wrongful acts of officers of the bankruptcy court entirely beyond their authority or duty to the prejudice of third persons.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 295.*]

2. BANKRUPTCY (§ 295*)—ACTIONS—JURISDICTION OF STATE COURT—INJUNCTION.

Plaintiff's husband having filed a voluntary bankruptcy petition, defendant was appointed trustee, and, ascertaining that there was danger of plaintiff and her husband removing assets without the state, defendant seized certain trunks, furniture, etc., at the direction of the referee. On opening the trunks he found them to contain wearing apparel and a man's wallet containing $1,940 in cash. This he kept. but returned the balance of the articles in the trunks to plaintiff, who thereafter brought three actions in the state court against him, one to recover the $1,940 as money belonging to her, which defendant was charged to have converted, another for the value of household and kitchen furniture of the value of $1,000 taken by the trustee and alleged by plaintiff to be owned in her own right, and the third to recover $10,000 for damages sustained from alleged misconduct of the trustee in seizing such property, etc. Held, that the acts of the trustee in so far as the property taken was concerned were in his official capacity, and hence he was entitled to an injunction restraining the prosecution of such suits, but not as to the action for damages for alleged abuse of authority.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 295.*]

Hawes & Pottle and Jesse W. Walters & Son, for plaintiff.
Victor Smith, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

NEWMAN, District Judge. On December 30, 1909, Morris Berman, of Blakely, Early county, Ga., filed his petition in voluntary bankruptcy in the clerk's office of the United States court. On February 19, 1909, H. G. Smith was duly appointed trustee of the bankrupt's estate. On March 22, 1909, Mrs. Fannie Berman, alleging herself to be the wife of Morris Berman, the bankrupt, presented to the judge of the District Court a petition, in which she set out: That in January, 1909, Morris Berman was duly adjudged a bankrupt by the bankruptcy court of the Northern district of Georgia, upon a voluntary petition filed by said Morris Berman, and that one H. G. Smith was appointed trustee for said bankrupt; that said H. G. Smith, on March 20, 1909, without any lawful warrant or authority of law, entered the premises of petitioner and her husband, and forcibly took possession and custody of $1,940 in money belonging to petitioner, and to which the bankrupt had no title or claim of title. She alleges that $1,000 of this amount was given to her as a wedding present several months ago. In proof of the same she holds, and w'll exhibit to the court, a canceled voucher drawn upon the bank by her relatives who made her a wedding present of this sum, and she likewise is prepared to prove that said money was withdrawn by her from the bank and retained in her possession in the form of currency until such time as she would have a need for the same. The remainder of the sum of $1,940 was made up of money accumulated by her prior to her marriage, as a clerk in various department stores in Birmingham, Ala., and no part of said sum ever became the property of the bankrupt.

She further alleges that on March 20, 1909, H. G. Smith, without any order from the court of bankruptcy, and without any authority whatever, forcibly entered the premises and residence of petitioner and her husband in Blakely, and took possession and control of all the property contained in said dwelling, without reference to the ownership of said property or its character; said property consisting of household and kitchen furniture, wearing apparel of petitioner and her infant child of two months old, and various articles of personalty belonging to petitioner, consisting of toilet articles and articles of the like nature, suitable only for use by a woman. She alleges that all of the articles and property so taken by the trustee were her property, except certain articles of household furniture, which the bankrupt had scheduled as a part of his assets. Many of the articles so taken were wedding presents made to petitioner upon her marriage to the bankrupt. Petitioner says she apprised the trustee of all these facts, pointing out to him the property which she claimed as her own, and importuned him to at least leave her in possession of the wearing apparel and articles of personalty such as were necessary for herself and her infant, and as to which it was manifest the bankrupt had no title; but in violation of her rights, 'and to her great mortification and inconvenience, the said trustee took possession of practically everything in said house except the clothing upon petitioner and her child, and turned them out of the home, locked the door, and barred the windows, and denied her access to her home.

Petitioner says that she is preparing to file in the court of bank-

ruptcy her claim to the household goods and other articles of property mentioned, but is apprehensive that H. G. Smith will attempt to make disposition of the property unless restrained by the court, and that she and her infant child are suffering great distress and mortification from their deprivation of necessary articles of wearing apparel and other personalty needful for their welfare.

In reference to the $1,940, she says: That H. G. Smith has commingled it with his other assets by depositing it to his credit in the First National Bank of Blakely, and that therefore she is unable to assert her claim to the specific money in the court of bankruptcy, and can therefore obtain no relief in this respect in said court; that she is about to file in the city court of Blakely a suit to determine and fix her title to this money, so that she may have the proper basis upon which to seek necessary relief in the court of bankruptcy; and that, unless his court will enjoin H. G. Smith from paying out and distributing the money to the creditors of the bankrupt until petitioner can set up and establish her title in the proper forum, she is in danger of sustaining great loss and of being deprived of said money. Whereupon she prays that Smith be enjoined from paying out, except by order of this court, the sum of $1,940, to which she claims title, until she can have the opportunity of having the question of title set up and determined, and that the said H. G. Smith be enjoined from interfering with petitioner in the use, occupancy, and enjoyment of her home in the city of Blakely, and the necessary articles of wearing apparel, household furniture, and other property in said dwelling which are essential to the needs of petitioner and her infant child. This was sworn to by petitioner.

On March 22, 1909, the court made an order as follows:

"Upon reading and considering the foregoing petition, it is ordered that the defendant, H. G. Smith, trustee, be and he is enjoined and restrained as prayed in the petition, until the matters to which said petition relates can be brought before and passed on by B. T. Castellow, the referee in bankruptcy, and heard and determined; all of said matters being hereby referred to said referee to be passed on by him as such referee."

On March 22, 1909, Mrs. Fannie Berman brought suit in the city court of Blakely, as follows:

"The petition of Fannie Berman respectfully shows: First, that H. G. Smith resides in said county; second, that on March 20, 1909, the said H. G. Smith, forcibly and without any warrant or authority of law, took possession of the sum of $1,940 in currency, being lawful money of the United States, and of the value of $1,940, which said sum of money belonged to your petitioner. Third, that, after having so taken possession of said money of your petitioner, the said H. G. Smith deposited the same in the First National Bank of Blakely, where it has become commingled with the other funds of the said bank, so as not to be distinguishable from other money of said bank. Fourth, that for the reason just mentioned petitioner is unable to recover the specific money so wrongfully and fraudulently taken possession of by the said H. G. Smith, but petitioner claims the right to recover from the said defendant the value of said money on said date, March 20, 1909, which she alleges to have been $1,940, besides interest thereon at 7 per centum per annum from said date, when petitioner's said money was wrongfully converted to the use of the said defendant."

171 F.—47

She then prays process.

On March 25, 1909, Mrs. Fannie Berman brought another suit in the city court of Blakely, against H. G. Smith, alleging: That he was in possession of certain lot of household and kitchen furniture, and other articles of personalty located in a dwelling house on River street, in the city of Blakely, being the same dwelling house formerly occupied by petitioner and her husband under a contract of rental; said articles being more fully described in an itemized statement thereof, attached to the petition as an exhibit. That she is the owner in her own right of each and every article of personalty described in said exhibit. That the value of said articles of property is $1,000. That H. G. Smith unlawfully retains possession of said articles of personalty and refuses upon demand to deliver the same to petitioner. And then the following:

"Petitioner disclaims any purpose by the filing of this suit, to recover from the said H. G. Smith the property described in this petition, but here and now elects only to recover the value of said property as alleged in this petition."

Whereupon she prays process.

On the same day on which the latter suit was filed, March 25, 1909, Fannie Berman brought another suit against H. G. Smith in the city court of Blakely for $10,000 damages. In this petition she sets out the fact of her husband having filed a voluntary petition in bankruptcy, having been adjudged a bankrupt, and having scheduled as his sole assets a stock of merchandise in the city of Blakely, and household and kitchen furniture of the value of $150 and alleges the fact set out in the two foregoing suits. She then alleges that:

"On the said date, March 20, 1909, the said H. G. Smith without having procured any order from the court of bankruptcy, or from any other court, came to your petitioner's home as aforesaid, and, after having invaded her said home in the manner above set forth, announced to her his purpose and intention of putting petitioner and her infant child of two months of age out of said house, further announcing that he was in possession of said premises, and that petitioner and her infant child could no longer remain therein, and in pursuance of said purpose the said H. G. Smith directed the servant of your petitioner, who was ordering over the telephone food for dinner, to desist from ordering such food, and to get out of the house. Thereafter the said Smith came to the door of the private bedroom of your petitioner, and while her husband was still absent from her home, and petitioner thereupon confronted him at the door and inquired of him by what right or authority he had to thus invade the privacy of her home. And in response to said inquiry the said Smith informed your petitioner that he was acting under his authority of trustee in bankruptcy of her said husband, and that he had been instructed to take over the possession and control of all of the property contained in said dwelling and to deprive petitioner and her husband and her infant child of the use and possession of the said home which had been rented by petitioner's husband from the said R. H. Stuckey. Your petitioner then demanded that the said Smith exhibit to her his authority for the performance of the said acts, and he failed and refused to exhibit any authority issuing from any court whatever, and your petitioner here and now charges that he had no such authority of any kind or character. Your petitioner then informed the said defendant that a certain trunk which she pointed out to him, and certain articles of household and kitchen furniture, crockeryware, silverware, wearing apparel, and various other articles of personalty which the said Smith had announced his intention of taking as such trustee, were not the property of the said bankrupt, but were the property of petitioner, nearly

all of which had been given to her by relatives and friends as wedding presents upon her marriage to the said Morris Berman upon May 14, 1907, and the remainder of the property not so given to petitioner she had purchased with her own private funds. Whereupon the said defendant Smith remarked that, notwithstanding such articles of personalty might belong to petitioner, he proposed to take possession of them and put petitioner and her said infant out of their home."

She then sets out the fact that, while she was talking with said Smith, her husband, accompanied by his counsel, came to the house, and thereupon counsel for petitioner and her husband inquired of Smith by what right or authority he proposed to commit the acts hereinbefore set forth. Thereupon defendant asserted that he had no written authority from any court authorizing him to perform said acts, but it was his purpose to do the things hereinbefore set forth in this petition without such authority.

She then alleges: That he cursed her husband, and said: "This is my house and not yours." That she pleaded with Smith with tears in her eyes not to take the wearing apparel of herself and her child, and that, notwithstanding this, he took possession of the wearing apparel of both petitioner and her infant child. She alleges that her trunk was taken to a public place in the city of Blakely and opened, and Smith took out the private articles of wearing apparel belonging to said petitioner and her infant, including underclothing and articles of a like nature, and spread them out on the floor and called to witness this disgraceful scene a number of men who lived in Blakely, at which time Smith indulged in various insolent and disgraceful remarks in reference to petitioner's property in the hearing of said bystanders. That, in addition to this, there was contained in the trunk a small box containing the sum of $7.50 in money which she had deposited therein from time to time for the use and benefit of her child.

She alleges: That she is blameless in all the actions referred to; that Smith had no reason for the commission of any of the tortious acts above described; that she has sustained actual damages in the sum of $1,000 on account of said tortious acts; and that defendant is liable to her for said acts. She claims $2,940 for attorney's fee, in the prosecution of the suit, and prays for process.

H. G. Smith, the trustee named, has filed a petition in this court, setting out the fact of the institution of the suits above named, and stating that on or about the 19th day of March, 1909, Morris Berman was packing his household effects with a view of shipping them to Birmingham, Ala., outside of the jurisdiction of the court, without even turning over to the trustee the articles listed in his inventory; and thereupon the petitioner, who had refrained from taking actual custody of the household effects because of the bankrupt's statement that his wife was sick in bed, communicated with the referee in bankruptcy, who resides in another city, and asked for directions and instructions as to his duty in the premises. That the referee directed petitioner to take possession of all the property belonging to the bankrupt, and prevent its being taken out of the jurisdiction of the court, and advised petitioner that he, as trustee, had authority to do so, without any written process, as the bankrupt had elected to relinquish all claim to all of his personal estate. That, acting under such in-

structions from the referee, he went to the house which had formerly been occupied by the bankrupt, his wife, and infant child, and found that all of the household effects (except a bed in which they had slept, and a few cooking utensils, etc., which had been used in getting breakfast) were already packed and awaiting shipment, and in addition two trunks. That petitioner was admitted in the house by Mrs. Fannie Berman after he had stated to her his official character, and in a few minutes the bankrupt appeared on the scene, accompanied by his attorney, and demanded that petitioner exhibit to him some written process authorizing the seizure of the household effects, whereupon petitioner stated that he had no such written process, but was acting under orders received from the referee, and asked to be allowed to inspect the contents of the two trunks before they were taken out by the bankrupt.

Both the bankrupt and his wife disclaimed having the keys to the trunks, so petitioner announced he would decline to allow them to be taken away until an inspection of their contents could be made. That he gave them all the wearing apparel in the house except such as they stated was in the trunks, and they departed to a neighbor's house, whereupon petitioner caused the trunks to be taken to the First National Bank of Blakely and locked the other household effects up in the house, retaining possession of the keys. That petitioner procured a key which would fit the larger of the trunks, which was a new trunk with no name marked upon it, and found the same to contain the clothing of the bankrupt, his wife, and infant child. A search of the contents of the trunks revealed the fact that there was concealed therein a man's wallet containing $1,940 in currency, which sum petitioner immediately deposited in his name as trustee of Morris Berman, in the First National Bank of Blakely, and now holds said fund subject to the order of the court. That during the day this trunk and its other contents, as well as the smaller trunk, were sent to the place where said bankrupt and his family had taken up their abode; but the larger trunk was returned with a note, purporting to have been signed by Mrs. Fannie Berman, stating it could not be accepted unless petitioner also returned the money in it, of which she for the first time made mention or asserted claim; but in a day or two later, at the instance of the bankrupt's attorney, petitioner again sent said trunk and its contents to the bankrupt's abode, and it was accepted by him, and his family restored to the use of all the clothing therein.

He then sets out the filing of the petition by Mrs. Fannie Berman in this court, the progress of the suits referred to, and the restraining order issued when the matter was referred to the referee. The referee failed to pass upon the matter, and it comes before the court on this question: Whether an injunction should be granted.

It is claimed on behalf of Fannie Berman, the wife of the bankrupt and the plaintiff in the suits in the city court, that while an action to recover specific property in the custody of the United States court cannot be brought against an officer of the United States in a state court, yet an action against such an officer as an individual for damages may be brought against a trustee in bankruptcy, or a United States marshal, or a receiver in a state court without the consent of the federal court,

and that the federal court will not enjoin the prosecution of such actions, and claim that, while the court has ample power over the res, it has not the power to protect a wrongdoer against an action for a personal tort committed by him in relation to such property. Counsel rely on: In re Russell & Burkitt, 101 Fed. 248, 41 C. C. A. 323; In re Kanter & Cohen, 121 Fed. 984, 58 C. C. A. 260; In re Spitzer, 130 Fed. 879, 66 C. C. A. 35; In re Grissler, 136 Fed. 754, 69 C. C. A. 406; In re J. M. Mertens & Co., 147 Fed. 182, 77 C. C. A. 478; McLean v. Mayo (D. C.) 113 Fed. 106, decided under the present bankruptcy act. Counsel also rely upon the decisions of the Supreme Court in: Leroux v. Hudson, 109 U. S. 468, 3 Sup. Ct. 309, 29 L. Ed. 1000; Covell v. Heyman, 111 U. S. 176, 180, 4 Sup. Ct. 355, 28 L. Ed. 390; Byers v. McAuley, 149 U. S. 618, 13 Sup. Ct. 906, 37 L. Ed. 867; North v. Peters, 138 U. S. 284, 11 Sup. Ct. 346, 34 L. Ed. 936; Buck v. Colbath, 3 Wall. 334, 342, 347, 18 L. Ed. 257.

Special stress is laid on the decision in Leroux v. Hudson, supra, as being decisive of the question now before the court. The contention, stated again, is that, while there can be no interference with res in possession of the bankruptcy court, and it must determine the propriety of its own possession, still an action of trespass may be brought by a third person for the wrongful seizure of property by a trustee or other officer of the bankruptcy court. It is doubtful whether the decisions of the Supreme Court which have been cited and just referred to under the old bankruptcy act are entirely applicable under the present act, in view of the decisions by the Supreme Court in White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183; Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157, and Murphy v. Hofman (decided January 4, 1909) 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. ——.

In Mueller v. Nugent, supra, in the opinion by the Chief Justice, it is said:

"It is true of the present law, as it was of that of 1867, that the filing of the petition is a caveat to all the world, and in effect an attachment and injunction (Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866), and on adjudication title to the bankrupt's property became vested in the trustee (sections 21e, 70, Act July 1, 1898, c. 541, 30 Stat. 552, 565 [U. S. Comp. St. 1901, p. 3430, 3451]) with actual or constructive possession, and placed in the custody of the bankruptcy court."

In Murphy v. Hofman, in an opinion by Mr. Justice Moody, this is said:

"Before going further it is well to ascertain the principles of law which are applicable to the situation. Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), as originally enacted, did not confer jurisdiction on the District Courts of the United States over suits brought by trustees in bankruptcy to assert title to property as assets of the bankrupt, or to set aside transfers made by the bankrupt in fraud of the creditors or by way of preference, unless by consent of the defendant. Bardes v. First Nat. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Frank v. Volkommer, 205 U. S. 521, 27 Sup. Ct. 596, 51 L. Ed. 911. The act, however, preserves the jurisdiction otherwise existing by statute of the courts of the United States, though it is limited to courts where the bankrupt himself could have prose-

cuted the action. Bush v. Elliott, 202 U. S. 477, 26 Sup. Ct. 668, 50 L. Ed.
1114. But where the property in dispute is in the actual possession of the
court of bankruptcy, there comes into play another principle, not peculiar to
courts of bankruptcy, but applicable to all courts, federal or state. Where a
court of competent jurisdiction has taken property into its possession, through
its officers, the property is thereby withdrawn from the jurisdiction of all oth-
er courts. The court, having possession of the property, has ancillary ju-
risdiction to hear and determine all questions respecting the title, possession,
or control of the property. In the courts of the United States this ancillary
jurisdiction may be exercised, though it is not authorized by any statute.
The jurisdiction in such cases arises out of the possession of the property,
and is exclusive of the jurisdiction of all other courts, although otherwise the
controversy would be cognizable in them. Wabash R. Co. v. Adelbert College,
208 U. S. 38, 54, 28 Sup. Ct. 182, 52 L. Ed. 379, 386. Accordingly, where prop-
erty was in the possession of the bankrupt at the time of the appointment
of a receiver, it was held that the bankruptcy court had jurisdiction to deter-
mine the title to it as against an adverse claimant, and that the receiver had
no right to deliver it to him without the order of the court. Whitney v. Wen-
man, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157. On the day the opin-
ion in the Bardes Case was announced, the same justice delivered the opin-
ion of the court in White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L.
Ed. 1183, a case in which the facts were essentially those of the case at
bar. Certain persons, copartners in trade, were adjudicated bankrupts, and
the case was sent to a referee in bankruptcy. They had a stock of goods in
a store, the entrance to which was locked by the referee. Certain other per-
sons claimed title to part of the stock of goods as obtained from them by a
fraudulent purchase, which had been rescinded. After the adjudication, these
persons brought an action of replevin of the goods against the bankrupt in
a state court, which was executed. It was held that replevin would not lie
in the state court, and that the District Court had jurisdiction by summary
proceedings to compel the return of the property seized. The court said:
"The goods were then in the lawful possession of and custody of the referee
in bankruptcy, and of the bankruptcy court, whose representative and substi-
tute he was. Being thus in the custody of a court of the United States, they
could not be taken out of that custody upon any process from a state court.'
The last two cases cited proceed upon and establish the principle that when
the court of bankruptcy, through the act of its officers, such as referees, re-
ceivers, or trustees, has taken possession of a res, as the property of a bank-
rupt, it has ancillary jurisdiction to hear and determine the adverse claims
of strangers to it, and that its possession cannot be disturbed by the process
of another court. And see Skilton v. Codington, 185 N. Y. 80, 85, 86, 77 N. E.
790, 113 Am. St. Rep. 885, and Frank v. Volkommer, which, by implication,
approve the same principle."

In view of this recent decision of the Supreme Court under the bank-
ruptcy act of 1898, it is earnestly contended by counsel for H. G.
Smith, the trustee, that this property was in the possession of the bank-
rupt as head of the family, including the trunks and everything con-
tained in them, and that it was the duty of the trustee to take this prop-
erty in his possession and hold it until the bankruptcy court could de-
termine the ownership of the same, and whether any of it belonged to
Mrs. Fannie Berman. It is conceded that he had scheduled a part
of his household goods, and that the goods so scheduled were in the
house when all of the property so scheduled and the other property in
the house was seized by the trustee; but, whether this contention be
true or not, it seems to me these suits are in effect proceedings to re-
cover the property in the possession of the trustee. The fact that the
suits are against H. G. Smith individually would not matter, for it is
clear that all his actions, as indicated by the record, were in his capac-
ity as trustee in bankruptcy for Morris Berman. He had no personal

interest in the matter whatever. While it is claimed in argument that he acted wrongfully, there is no contention that he acted in his individual capacity in any way. The first suit, filed March 22, 1909, is undoubtedly a suit to recover the personalty, an itemized list of which is attached to the petition filed in the state court. The petitioner states that Smith "unlawfully retains possession of said articles of personalty, and refuses, upon demand, to deliver the same to your petitioner."

As to the other suit for $10,000 damages, I am not so clear whether there is enough in the suit independently of the effort to recover the $1,940, and personal property to make a case, or if the proper proof can be submitted to sustain such a case as is sought to be made. This, however, will be for the state court to determine. There is no question that suit may be brought in the state courts for wrongful acts of officers of the bankruptcy court, where they go entirely beyond their duties as such officer and are guilty of conduct which is actionable in its character, particularly as against third persons.

An injunction will be granted against the two suits referred to—that is, the suit to recover the $1,940, and the suit to recover the furniture— and denied as to the remaining suit, the suit for $10,000 damages, and the restraining order in reference to the latter dissolved.

An order will be entered accordingly.