ZACHARY PULLIAM, EXECUTOR OF AMOS ALBRITTON, PLAIN·
TIFF IN ERROR, *v*. ALEXANDER OSBORNE, ADMINISTRATOR
OF SAMUEL WOODWARD.

Although, by the laws of Alabama, a lien upon property accrues from the delivery
of the execution to the sheriff or marshal, and the rights of creditors claiming
under the same jurisdiction are adjudged accordingly, yet the same rule does not
apply where a controversy arises between executions issued by a court of the
United States and a State court.

In such a case the rule is, that whichever officer, the sheriff or the marshal, acquires
possession of the property first by the levy of the execution, obtains a prior right,
and a purchaser at a judicial sale will take the property free from all liens of the
same description.

THIS case originated in the district court of the United
States, for the middle district of Alabama, between Samuel
Woodward, plaintiff in execution, and Amos Albritton,
(claimant,) defendant, who were afterwards represented by
their administrator and executor respectively. It was a con-
test as to the superior validity of executions issued out of a
state court and a United States court, under the following
circumstances : —

| United States Execution. | State Execution. |
|---|---|
| 1842. | 1842. |
|  | April 19. Two judgments against Pulliam in the district court of Pickens county. |
| May term. Woodward's judgment against Pulliam in the district court of the United States for the middle district of Alabama. | May 4. Executions on these issued. |
| June 10. Execution issued. | July 12. Sheriff levied on certain slaves. Bonds given for their forthcoming on first Monday in August. |
|  | August 3. Execution on these forthcoming bonds. |

|  | September 21.    Execution levied on the negroes named in the issue in this case. |
| October 26.   Marshal levied on the negroes. | October 3.        Sheriff sold slaves to Albritton. |

Upon the trial, the court instructed the jury as follows, viz.

On the case being submitted to the jury, the court charged the jury, that if the executions which issued on the two judgments against Pulliam were levied upon sufficient property, and a bond given for the forthcoming of the property on the day of sale, in each case, which bonds were forfeited and thus returned by the sheriff, and that afterwards executions were issued on the judgments rendered on the said forthcoming bonds, against the said Pulliam and his surety in the said forthcoming bonds, which said executions did not come to the hands of the sheriff until some days after the execution in favor of the plaintiff was received by the marshal; that the said plaintiff had the priority of lien on the property of Pulliam, and that the said negroes levied upon by the marshal, in said case, were liable to satisfy the execution of the said plaintiff, notwithstanding they had been levied upon and sold by the sheriff under the execution against Pulliam and his surety in the forthcoming bonds; to which charge claimant excepts, and prays the judge of this court to sign and seal this bill of exceptions, which is accordingly done.

WM. CRAWFORD, [SEAL.]

This instruction being in favor of Woodward, the plaintiff in execution, Albritton sued out a writ of error and carried the case to the circuit court of the United States, for the fifth judicial circuit, southern district of Alabama.

In April, 1853, that court passed an order "that the said cause be transferred to the supreme court of the United States, according to the statute in such case made and provided."

It was argued by *Mr. Badger*, for the plaintiff in error, no counsel appearing for the defendant.

*Mr. Badger* contended that the instructions of the court below were erroneous, and that the claimant, Albritton, obtained a good title under his purchase from the sheriff.

First. The lien upon the slaves created by the issue, delivery, and levy of the first executions from the state court continued, notwithstanding the giving of the forthcoming bonds; the

slaves were still in *custodia legis*, and not liable to seizure under another execution from another court. Caperton *v.* Martin, 5 Ala. N. S. 217; Langdon *v.* Brumby, 7 Ala. 53; Doremus *v.* Walker, 8 Ala. 194; Hagan *v.* Lucas, 10 Pet. 400.

Secondly. If the lien of the first-issued executions upon the judgments in the state court was lost by the taking of the forthcoming bonds and surrender of the slaves to the defendant in execution, still, the title of the claimant was valid. Then the case would be this: an execution from the court of the United States was delivered to the marshal on the 10th June, but no proceedings had until the 26th October; meantime executions from the state court were delivered to the sheriff, (to wit, on the 3d of August,) and the slaves levied upon, (to wit, on the 2d of September,) and sold, (to wit, on the 3d of October.)

Now, the rule in such case, adopted because absolutely necessary to prevent collisions between different jurisdictions having a common authority over the same subject, is this: " Where there are several authorities equally competent to bind the goods of a party, when executed by the proper officer, they (the goods) shall be considered as effectually, and for all purposes, bound by the authority which first actually attaches upon them, in point of execution, and under which an execution shall have been first executed." Payne *v.* Drewe, 4 East. 523; Hagan *v.* Lucas, above cited.

Upon this principle, the supreme court of North Carolina, in which State the common law still obtains that executions bind the goods from their *teste*, laid down the rule in these terms: " When several executions issuing from different competent courts are in the hands of different officers, then, to prevent conflicts, if the officer holding the junior execution seizes property by virtue of it, the property so seized is not subject to the execution in the hands of the other officer, although first tested." And the court held that " a levy attaches upon the goods in point of execution." Jones *v.* Judkins, 4 Dev. and Bat. 454.

It is believed that nothing can be urged against these positions with even apparent force, except what is said by the supreme court of Alabama in the before-cited case of Langdon *v.* Brumby: that where goods are levied upon by a junior execution, and delivered to a third person upon his making claim, &c., according to the law of that State, these goods may be seized under an execution, the lien of which first commenced.

If this should be alleged, the following answers will be given: —

40*

1. The case stated by that court is not ours; there the execution referred to was senior to that under which the first seizure was made; here the execution of the defendant in error was junior to that under which the first seizure was made.

2. However, the rule may be a good one in cases contemplated by it where the same officer is charged with both executions, it being his duty so to arrange the processes in his hands as to apply the property to the satisfaction of that which has legal priority, it can never be just where the executions are in the hands of several officers acting under independent authorities, having a concurrent jurisdiction over the same subject.

3. The rule was applied and is applicable only where no sale has been actually made under the junior execution; for if such sale has been made, whether with or without fault of the officer holding the executions, the title of the purchaser is valid, and the goods sold are not liable to seizure under the senior execution. Smallcomb v. Buckingham, 1 Ld. Raym. 251; Hutchinson v. Johnston, 1 T. R. 729; Ryebot v. Peckham, in note, 731.

4. If this be so, where there is one officer acting under one jurisdiction, in the execution of several writs, à fortiori, and, to avoid manifold inconveniences, it must be so where there are different officers acting under jurisdictions independent of each other.

Finally. There having been no seizure under the execution from the United States court, on the 3d August, when the sheriff made his levy, nor when he made his sale, on the 3d of October, this much is certain: The sheriff had a right, and was bound to levy and sell; and, if he had returned nulla bona, he would clearly have been liable for a false return. Then the sheriff had lawful authority to seize, and lawful authority to sell, and, consequently, the purchaser obtained a good title; for how can it be maintained that the sheriff may lawfully sell what no one may lawfully buy? Yet this is the whole question in the cause; for the marshal claims to sell under his process what had been before bought under the execution of the state court, which he cannot do if the former sale was lawfully made, under sufficient authority. It is, in one word, an attempt by the marshal to transfer to another the consequences justly due to himself, for having delayed to take any steps upon the execution in his hands, from the 10th June to the 26th October, and permitting a junior process, in the mean time, to attach and apply the property to another demand.

Mr. Justice CAMPBELL delivered the opinion of the court.

This was an issue in the district court, under a statute of Alabama, (Clay's Digest, 213, §§ 62, 64,) for the trial of the

right to property taken under an execution from that court, in favor of the appellee, and claimed by the testator of the appellant, as belonging to him, and not to the defendant in the execution.

It appeared on the trial that, at the delivery of the execution to the marshal, in favor of the appellee, the property belonged to the defendant, and that the levy was made before the return day of the writ; but that, before this levy, the property had been seized and sold to the claimant, by a sheriff in Alabama, under executions issued from the state courts, upon valid judgments, after the *teste* and delivery of the executions from the district court.

The district court instructed the jury, that a sale under a junior execution from the state court did not devest the lien of the execution from the district court, and that the writ might be executed, notwithstanding the seizure and sale under the process from the state court.

The lien of an execution, under the laws of that State, commences from the delivery of the writ to the sheriff, and the lien in the courts of the United States depends upon the delivery of the writ to their officer. But no provision is made by the statutes of the State or United States for the determination of the priorities between the creditors of the respective courts, state and federal. They merely provide for the settlement of the priorities between creditors prosecuting their claims in the same jurisdiction.

The demands of the respective creditors, in the present instance, were reduced to judgments, and the officers of either court were invested with authority to seize the property.

The liens were, consequently, coördinate or equal; and, in such cases, the tribunal which first acquires possession of the property, by the seizure of its officer, may dispose of it so as to vest a title in the purchaser, discharged of the claims of creditors of the same grade.

This court applied this principle (Williams *v.* Benedict, 8 How. 107) to determine between judgment creditors in a court of the United States, and an administrator holding under the orders of a probate court of a State ; in Wiswall *v.* Simpson, 14 How. 52, in favor of a receiver holding under the appointment of a court of chancery of a State and a judgment creditor; in Peale *v.* Phipps, 14 How. 368, in favor of a trustee in possession, under the order of a county court, against such a creditor; and in Hagan *v.* Lucas, 10 Pet. 400, between execution creditors issuing from state and federal jurisdictions. The same principle has been applied, in several state courts, in favor of the purchasers at judicial sales of steamboats, and other

crafts subject to liens in the nature of admiralty liens.　Steamboat Rover *v.* Stiles, 5 Black. 483; Steamboat Raritan *v.* Smith, 10 Mo. 527; 19 Ala. 738; and is recognized in the courts of common law and admiralty in Great Britain.　4 East. 523; 2 Wms. Ex'rs, 888; The Saracen, 3 W. Rob.

In Alabama, the *bonâ fide* purchaser at a judicial sale, made to enforce a statutory lien, takes the property discharged of liens of the same description, whether the subject of sale be land or personal property.　Wood *v.* Gary, 5 Ala. 43; 12 Ib. 838; 11 Ib. 426.　The propriety of the rule is fully vindicated by the statement in Hagan *v.* Lucas, 10 Pet. 400, where this court says : " A most injurious conflict of jurisdiction would be likely often to arise between the federal and state courts, if the final process of the one could be levied on property which had been taken by the process of the other.　The marshal or the sheriff, as the case may be, acquires by a levy a special property in the goods, and may maintain an action for them.　But if the same goods may be taken in execution at the same time, by the marshal and the sheriff, does this special property vest in the one or the other, or both of them ?　No such case can exist; property once levied on remains in the custody of the law, and it is not liable to be taken by another execution in the hands of a different officer, and especially an officer acting under a different jurisdiction."

The instruction of the district court is erroneous, and its judgment is therefore reversed and cause remanded.

### Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the southern district of Alabama, and was argued by counsel.　On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the district court of the United States for the middle district of Alabama in this cause be and the same is hereby reversed with costs, and that this cause be and the same is hereby remanded to the said district court of the United States for the middle district of Alabama, with directions to award a *venire facias de novo.*