## JACKSON v. PARKERSBURG & O. V. ELECTRIC RY. CO.

(District Court, N. D. West Virginia.  June 12, 1916.)

1. Judgment ⚖☞828(3)—Jurisdiction—Process—State and Federal Courts.
Where the federal court, having appointed a receiver of a railroad company, sought to enjoin the continuance of a suit in the state court, the determination of the state court, affirmed by the highest tribunal of the state, that the railroad company was duly served, will not be reviewed by the federal court.
[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1507, 1508; Dec. Dig. ⚖☞828(3).]

2. Courts ⚖☞508(1)—Jurisdiction—Determination.
Whether the federal court, which appointed a receiver of a railroad company will enjoin a suit against the company in the state court, must be determined by the federal court alone, subject to review by the appellate federal tribunals.
[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1418; Dec. Dig. ⚖☞508(1).]

3. Courts ⚖☞508(2)—Federal and State Courts—Injunction.
Despite Rev. St. § 720, declaring that a writ of injunction shall not be granted by any federal court to stay proceedings in any court of a state, except in cases where such injunction may be authorized by the law relating to proceedings in bankruptcy, a federal court, having appointed a receiver of a railroad company, may, in the aid of its own jurisdiction and to render its decrees effective, enjoin proceedings against the company in the state courts.
[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1418; Dec. Dig. ⚖☞508(2); Injunction, Cent. Dig. § 72.]

4. Courts ⚖☞493(1)—Concurrent Jurisdiction—Comity.
Where suits are brought in courts of concurrent jurisdiction, involving a controversy between substantially the same parties or their privies, and no seizure of the res is made, that court in which suit is first brought is entitled to exclusive jurisdiction.
[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1346, 1348; Dec. Dig. ⚖☞493(1).]

5. Courts ⚖☞498—Concurrent Courts—Jurisdiction.
Where suit is brought either in federal or state court simply for enforcing a lien or debt against 'a defendant, who is permitted to remain in possession of the property bound by the lien, and subsequently a suit is brought in the other court, in which for proper reason the defendant's property is sequestered or seized, the court first sequestering or seizing the property has exclusive jurisdiction, regardless of the prior institution of suit in the other court; this being particularly true where the practice

⚖☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in the court in which suit is first brought is such that great delay in the proceedings and perfection of the lien may occur.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1387–1396; Dec. Dig. ⊂⇒498.]

6. EXECUTION ⊂⇒21—SALE OF REALTY—RIGHT TO ENFORCE.

In West Virginia real estate cannot be sold under execution, but only in an equity suit after the return of execution unsatisfied.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 49; 49½, 68–75; Dec. Dig. ⊂⇒21.]

7. ATTACHMENT ⊂⇒197—REAL ESTATE—POSSESSION.

In West Virginia, even where a suit is begun by attachment of real estate, actual possession of the land is not taken by the sheriff, and an action at law or in equity must be instituted to enforce the lien acquired.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. § 643; Dec. Dig. ⊂⇒197.]

8. COURTS ⊂⇒475(1)—CONCURRENT JURISDICTION—EXCLUSIVE JURISDICTION.

The rule that of two courts of concurrent jurisdiction the one first acquiring jurisdiction over a suit takes it to the exclusion of the other is applicable only where the parties or privies to the suits are the same, and the same relief or remedy is sought in both cases.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1229, 1247–1257, 1259; Dec. Dig. ⊂⇒475(1).]

9. COURTS ⊂⇒508(3)—CONCURRENT JURISDICTION—COMITY.

Where a federal District Court had unquestioned possession through its receiver of the property of a railroad company, while a state court, in which suit to enforce a lien on the company's property had been first instituted, had not taken possession of the property by sequestration or receiver, and the parties to the two suits and the relief sought were different, continuation of the suit in the state court and sale of the property under the lien acquired may be enjoined by the federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1422; Dec. Dig. ⊂⇒508(3).]

10. COURTS ⊂⇒508(3)—CONCURRENT JURISDICTION—PROCEEDINGS—INJUNCTION.

Where a creditor who sued a railroad company in a state court delayed any attempt to sell the railroad company's property to satisfy his lien for over two years after the federal court took possession of the railroad company's property in receivership proceedings, and ordered the completion of the road and its operation, he is guilty of such laches that further proceedings in his suit will be enjoined.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1422; Dec. Dig. ⊂⇒508(3).]

In Equity. Suit by Henry M. Jackson against the Parkersburg & Ohio Valley Electric Railway Company. Upon motion by the Farmers' & Producers' Bank for an injunction against continuance of a suit by the Central District & Printing Telegraph Company in the state court. Injunction issued.

Arlen G. Swiger, of Sistersville, W. Va., and Arthur S. Dayton, of Philippi, W. Va., for Farmers' & Producers' Nat. Bank, a receiver's certificate holder.

V. B. Archer, of Parkersburg, W. Va., for receiver.

M. H. Willis, of New Martinsville, W. Va., for Central District & Printing Telegraph Co.

DAYTON, District Judge. The controversy here is one of conflicting jurisdiction between this and a state court. The Parkersburg & Ohio Valley Electric Railway Company was incorporated under the laws of West Virginia, for the purpose of constructing an electric railroad from Parkersburg, W. Va., through the counties of Wood, Pleasants, Tyler, Wetzel, Marshall, and Ohio, to the Pennsylvania state line. It entered upon the construction of its road in the fall of 1904, beginning at Sistersville and constructed five miles thereof from that point to Friendly. In 1905 it executed a mortgage for $100,000 of bonds, of which it issued $75,000, and used the proceeds in construction work, and hypothecated the remainder to secure a bank loan of $13,000. It entered into a contract with another road whereby cars were to be run jointly from New Martinsville to Friendly, a distance of 15 miles. It became involved before completing in full the construction of the work undertaken, and defaulted in the payment of the interest coupons attached to its mortgage bonds.

Henry M. Jackson, a citizen of Pennsylvania, claiming to be the owner and representative of some $52,000 of these mortgage bonds and of some $8,580 of overdue interest coupons thereof, on May 8, 1911, filed this bill in this court, making defendants thereto the railroad and its mortgage trustee, the Union Trust & Deposit Company. This bill set forth the embarrassed condition of the railroad company, the necessity for the completion of the work undertaken, and the performance of its contract with the other road. Upon its representation and prayer a receiver was appointed, who took possession of the physical property and assets of the company, and receiver's certificates to the amount of about $60,000 have been in this suit authorized and issued for the purpose of completing construction and operating the road.

It is to be noted that this bill in no wise disclosed the fact that any lien other than the mortgage one existed against the property or any suit had been instituted in any other court. However, on December 3, 1907, the Central District & Printing Telegraph Company recovered in the circuit court of Tyler county a judgment against this railroad company for $3,004.40 and costs, and in September, 1909, it instituted its suit in equity to enforce this judgment, making parties defendant thereto the railroad company and one Jack Hamilton, who it alleged had filed a mechanic's lien upon the road, but had failed to sue to enforce it within the statutory period and thereby lost the benefit thereof. On October 8, 1909, it sued out process upon, and at January rules, 1910, filed, an amended bill making the mortgage trustee, the Union Trust & Deposit Company, and John Schrader additional parties, in which it alleges the execution and recordation in 1905 of the $100,000 mortgage, and alleges some of the bonds thereof to have issued to Schrader, the contractor for constructing the road, but that Schrader had failed to complete his contract, and was only entitled to be paid thereout for the work actually done by him. On June 24, 1910, an order of reference to a commissioner to ascertain liens was entered, and no further proceedings were had until three years thereafter, on June 27, 1913, when another order of refer-

ence was entered, setting forth that the commissioner to whom reference had been made by the first order had retired from office and in consequence substituting another.

[1] This last reference was executed, and upon the commissioner's report that no other liens existed a decree of sale was on September 13, 1913, entered to satisfy this judgment alone. On November 15, 1913, the defendant railroad company appeared for the first time to this suit, alleged it had never been served with process upon either the original or amended bill, and moved to set aside this decree of sale. This created litigation that was finally by the opinion and mandate of the Supreme Court of Appeals of the state decided adversely to the contention of the railroad company, and the question as to whether the railroad was or was not served with process in that suit, now sought to be raised here, may be put aside and regarded as settled by this state court adjudication.

[2] It is, however, to be carefully noted that never in the course of proceeding in the state court was any attempt made by it to take in possession the corpus of the railroad company's property by the appointment of a receiver, the issuance of attachment, or otherwise, and that its decree of sale was entered more than two years after the appointment of the receiver by this court, and when such corpus was in his possession as such. A holder of receiver's certificates now here asks an injunction of the state court's decree of sale. The sole question therefore is: Which court has jurisdiction to administer the assets of this railroad company? This question must be determined alone by this court, subject to all proper appeals to and supervision by the federal appellate courts.

[3] Where the federal court acts in aid of its own jurisdiction and to render its decree effectual, it may, notwithstanding section 720, Rev. Stat., restrain all proceedings in a state court which have the effect of defeating or impairing its jurisdiction. Julian v. Central Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497; French, Trustee, v. Hay, 22 Wall. 250 note, 22 L. Ed. 857. While this power by injunction to maintain jurisdiction is so clearly established, I am not unmindful of the fact that comity and the necessity of avoiding conflict where possible imperatively demands that such power should be exercised with the greatest caution, and only after the most careful consideration and abiding conviction that its exercise cannot be avoided under the rules of law enunciated by the courts of last resort. With the fullest realization of this duty, I have given this case and the very able arguments and briefs of counsel on both sides the most careful study and consideration. I have examined all authorities cited, and others, too. I am driven to the conclusion that some considerable amount of confusion exists in these authorities, and that a careful sifting of each in the light of its particular circumstances and conditions does largely, but not altogether, dissipate this confusion, and enable us to arrive at the true principles and rules of practice to be followed. Within the limits of this opinion it will be impossible to consider each and all the cases. They can be found collated in the Digests and Rose's Notes Dig. U.

S. Sup. Ct. Repts. (Lawyers' Co-op. Ed.) vol. 2, Courts, VI, g, 1, p. 2311 et seq.; Encyclopedia U. S. Sup. Ct. Repts. vol. 4, title Courts, § B, p. 1170 et seq.; Rose's Notes, vol. 2, p. 276; vol. 3, p. 584; vol. 3, p. 805; vol. 4, p. 725; vol. 5, p. 800; vol. 6, p. 518; vol. 7, p. 1011; vol. 10, p. 794.

Chief Justice Marshall, at the February term, 1824, of the Supreme Court, in Smith v. McIver, 9 Wheat. 532, 6 L. Ed. 152, announced the rule that:

"In all cases of concurrent jurisdiction, the court which first has possession of the subject must determine it conclusively."

One of the difficulties involved in enforcing this rule, thus enunciated in its broad and general terms, is strikingly illustrated in the case of Bell v. Ohio Life & Trust Co., 1 Biss. 260, Fed. Cas. No. 1,260, where a conflict arose between the federal court and a state court in Ohio. There summons to institute the suit had issued from the state court, but had not been served; thereafter a bill was filed in the federal court, a subpoena issued the same day was served, and a receiver was appointed; later in the day in the state court application was made, and another and different receiver was appointed by it. Mr. Justice McLean, sitting upon the hearing, sustained the jurisdiction of the federal court, but avoided the question here involved by holding that:

"Priority of jurisdiction as between the state and the United States courts is determined by the service of process, and not by the date of the commencement of the suit."

It can readily be perceived that this decision was not calculated to meet the practical difficulty that must inevitably arise in the enforcement of the general rule laid down by Chief Justice Marshall, because the circumstances and conditions upon which it was based necessarily would thereafter be of rare occurrence. A short time after the Supreme Court in Hagan v. Lucas, 10 Pet. 400, 9 L. Ed. 470, speaking through Justice McLean, made a further limitation upon the general rule by holding that the first levy on property, whether made under the jurisdiction of the United States or of a state, withdraws the property from the reach of process from the other jurisdiction. Following this case came that of Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322, which, to my mind, is peculiarly important in the determination of this controversy. It was there held:

One having a judgment lien on land of his debtor, which is in the possession of a receiver * * * cannot proceed to levy his execution, if he have notice of the fact that the property is in the custody of the law; he must apply to the court of chancery, which will take care to protect his interest, in making a sale, or in distributing the proceeds.

This case arose in Alabama, where the law authorized land to be sold under execution. Under the laws of West Virginia real estate cannot be sold in that way for debt, but a lien must be obtained, and resort be had to a bill in equity to enforce it. When such bill has been filed for this purpose, by proper showing made, a sequestration of the rents, issues, and profits of such real estate may be had, and this is usually accomplished by the court, acting by and through its

receiver, renting it for a fixed period. If no such sequestration is decreed, the land remains, pending the maturity and hearing of the cause, in the possession of the debtor, who retains such possession until after a sale thereof decreed by the court is made, confirmed, and writ of possession awarded, and, if necessary, executed. During all these proceedings, without sequestration, the res is never held to be in custodia legis.

Further, it is to be noted in this Wiswall v. Sampson Case the receiver's possession and the jurisdiction of the chancery court appointing him was not permitted to be ousted, notwithstanding the judgment was a lien upon the land and the execution was laid before the receiver obtained actual possession of the property. See, also, Peale v. Phipps, 14 How. 368, at page 375, 14 L. Ed. 459. From this time the vital modification or rather construction of the general rule is clearly established that "possession of the subject" must be construed to require actual possession of the res. In Pulliam v. Osborne, 17 How. 471, 15 L. Ed. 154, it was held that, in case of conflicting executions issued out of federal and state courts, priority is given to that under which there is first actual seizure of property. In Taylor's Adm'rs v. Carryl, 20 How. 583, 595, 15 L. Ed. 1028, it was held that, where a vessel had been seized under process of foreign attachment issuing from a state court, issuing of process under libel filed in United States court for mariners' wages could not divest the state's authority over the vessel; it having first acquired the actual possession thereof. In Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257, the Supreme Court, speaking through Mr. Justice Miller, went a step further in elucidating the general rule, holding that:

The rule that, among courts of concurrent jurisdiction, that one which first obtains jurisdiction of a case has the exclusive right to decide every question arising in the case, is subject to some limitations, and is confined to suits between the same parties, or privies, seeking the same relief or remedy, and to such questions or propositions as arise ordinarily and properly in the progress of the suit first brought, and does not extend to all matters which may by possibility become involved in it.

Subsequently follow such cases as Hammock v. Loan & Trust Co., 105 U. S. 77, 82, 26 L. Ed. 1111, holding that, a seizure by a federal court was lawful, since the prior appointment of a receiver by a state judge in vacation was void under the laws of Illinois; Krippendorf v. Hyde, 110 U. S. 276, 283, 4 Sup. Ct. 27, 28 L. Ed. 145, that courts have power to protect their officers in the possession of the property seized and also to protect their own jurisdiction in the premises; Covell v. Heyman, 110 U. S. 176, 181, 4 Sup. Ct. 355, 28 L. Ed. 390, that possession by a marshal of property under execution issued by a federal court is a complete defense to an action of replevin in a state court, without regard to its rightful ownership; Heidritter v. Elizabeth Oil Cloth Co., 112 U. S. 294, 304, 5 Sup. Ct. 135, 28 L. Ed. 729, that where proceedings in rem are commenced in both state and federal courts against the same property, exclusive jurisdiction is acquired by the court which first acquires possession of the res; and many others which sustain and apply this rule that jurisdiction is secured by taking possession of the res.

Among these subsequent cases, however, particular attention should be given to that of Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660, for its facts are so near to those of this case as to make it very pertinent if not decisive. In that case Coleman instituted suit (the first) in the federal court against the defendant railroad company to enforce his lien for work and labor done; a receiver was appointed, who subsequently was discharged, and possession of the property returned to the railroad company by him, the railroad company, however, making answer and defense to Coleman's bill; a number of other creditors of the company also filed petitions in this cause, seeking the enforcement of their demands; in this state of affairs, a bill was presented by sundry creditors to the state court, seeking the appointment of a receiver for the railroad; such receiver was appointed by the state court, who took possession and retained it for 16 days, when such possession was taken from him by a receiver who had been appointed under an order of the federal court restoring its receivership, which order was entered in the original cause still pending there, some 14 days after this state court's receiver had been appointed. The Supreme Court reversed the lower court in its sustaining the federal receivership, holding that:

A Circuit Court of the United States has not the power to appoint a receiver of property already in the possession of a receiver duly and previously appointed by a state court, and cannot rightfully take the property out of the hands of the receiver so appointed by the state court.

Finally, the extent and exclusive character of this jurisdiction by reason of a court first taking possession of the res is illustrated by the rulings in Wabash Railroad v. Adelbert College, 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379, where it is held:

"The possession of property in the Circuit Court carries with it the exclusive jurisdiction to determine all judicial questions concerning it, and that jurisdiction continues after the property has passed out of its possession by a sale under its decree to the extent of ascertaining the rights of, and extent of liens asserted by, parties to the suit and which are expressly reserved by the decree and subject to which the purchaser takes title; and any one asserting any of such reserved matters as against the property must pursue his remedy in the Circuit Court, and the state court is without jurisdiction."

I have not attempted to consider in this review a large number of the other Supreme Court decisions, nor to refer at all to those of lower federal courts and of state courts, because of the immense number that have been enunciated. I cannot refrain, however, from citing the one case of Knott v. Evening Post Company (C. C.) 124 Fed. 342, where the question is so clearly and ably discussed by Judge Evans. Sufficient for me to say that my investigation of these cases, so far as I have been able to examine them, has convinced me that:

[4] First. Where suits have been instituted in courts of concurrent jurisdiction involving a controversy between substantially the same parties or their privies, and no actual seizure of the res has by lawful process been made by either, in such case the one in which suit was first brought is entitled to exclusive jurisdiction and should determine the controversy.

[5-7] Second. Where there has been suit brought in either federal or state court for the purpose of enforcing simply a lien or debt against a defendant who is permitted to remain in possession of the property bound by such lien, and subsequently a suit is brought in the other court to assert such a lien or for other relief, and in such suit sufficient grounds are set forth and made apparent that, by reason of insolvency, waste, or other causes, sequestration and seizure of the property should be had, and in consequence is, under order or decree, so taken in possession by said other court, jurisdiction over such property seized passes to and vests in the court of seizure, notwithstanding the prior institution of the suit without sequestration or seizure in and by the first court.

Third. That the importance of seizure of property being made the test of jurisdiction is peculiarly necessary in states like West Virginia, where under its laws real estate cannot be sold under execution, but only after execution has been returned nulla bona as against the debtor's personal property, and only after, in ordinary cases, in an equity suit, the lienors have been convened, the amount and order of priority of their liens ascertained and determined, and where actual possession can only be, pendente lite, obtained by sequestration of rents, issues, and profits by and through a special decree entered in the cause. Even where attachments are sued out against real estate, no actual possession, in practice, is taken in this state. The levy is simply indorsed by the sheriff from the record description of the land, and ordinarily this officer never goes upon the land, nor sees it, nor does he take the slightest notice or care of it after his levy, or of its rents, issues, or profits. Notice of the issuance and pendency of such attachment and of the suit to enforce it is secured by recordation of the notice of lis pendens provided for by statute. That such attachment secures only a lien in our practice is clear from the fact that it requires either an action at law or in equity to be instituted to enforce it.

And again it is to be remembered in this connection that a bill in equity in this state to enforce sale of real estate for creditor's liens can be instituted in any county where the debtor's real estate or any part of it may be situate. Many corporations and individuals hold real estate in several different counties. There are 31 counties in this federal judicial district. Under state law and decisions a suit is held to be instituted when process is sued out at rules; such process need not be returnable for 90 days, and if returned not served, alias summons may then issue, or order of publication be had requiring publication for 4 weeks. The bill or declaration need not be filed until at least a month has passed after the summons has issued, and if not filed, then a dismissal at rules may be set aside at the next term, which may be months in the future. In short, the delay, confusion, and uncertainty arising from these conditions under state laws could hardly be estimated, if any other test of jurisdiction should be established, and especially the one of the mere institution of suit without seizure of the res.

[8] Fourth. The general rule is further limited that, where conflict arises, it is only applicable where the parties or privies to the suits are the same, and both seek the same relief or remedy; and then it is confined to such questions or propositions as arise ordinarily and properly in the progress of the suit first brought, and does not extend to all matters which may by possibility become involved in it, as held in Buck v. Colbath, supra.

Fifth. That, in order to maintain its jurisdiction, rightfully assumed by reason of the conditions arising in any of the ways above set forth, it is the right and the duty of a federal court to enjoin and restrain a state court from interfering with its control and disposition of the res in its possession, or from seeking to oust its jurisdiction.

[9] Applying these principles to the case here, it seems to me this court clearly has jurisdiction over this railroad company's property and the disposition of it for these reasons: (a) Because it has unquestioned possession through its receiver of it; and (b) the state court's jurisdiction over it rests alone upon the fact that a suit was first instituted in it for the sole purpose of enforcing a lien, but with no attempt to sequester the property or appoint a receiver to take possession of it; (c) because the parties to the two suits are not the same, the same relief or remedy is not sought by both, and questions involved are different in each. The purpose of the state court suit was solely to enforce collection of a debt; that of this suit to secure the completion and operation of a railroad line for public use and benefit by means of receiver's certificates to be issued by consent of the bondholders, and to enable it to perform a contract made by it with another company.

[10] I am aware that the decision of this particular case might have been based, with the same result, upon an entirely different ground— that of the laches of the plaintiff in the state court suit in prosecuting its cause. There may be laches in this particular, and this case may be considered as a fair illustration of the fact. It is true the institution of its suit as against its creditor stayed the statute of limitation, but to allow it to lie dormant for more than two years after this court, without notice of any kind of its pendency, had taken possession of the uncompleted road, and, through its receiver, had issued near $60,000 of receiver's certificates, which had been sold to innocent purchasers, and with the proceeds had completed and put into operation the uncompleted section of it, and enabled it to perform its. contract with the other road, and then to appear and demand that the property shall be taken away and sold for its debt alone, and in its suit alone, which recognizes no right in the holders of the receiver's certificates, no right in the bondholders, nor in the road whose contract is to be broken, does not present, in my judgment, such diligence and fair dealing as equity requires. Its right to appear in this cause and prove its lien, and have provision made for its payment out of the assets of the company is clear; but it cannot demand any other or greater right.

However, because of the importance of this question of conflict of jurisdiction arising now so often in this district, I have made this in-

vestigation of the law, as best I could, in order that we may have restated the rules to guide us when such conflict arises.

The Central District & Printing Telegraph Company will be enjoined and restrained from prosecuting further its suit in the state court.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes