UNITED STATES FIDELITY & GUARANTY CO. v. FIRST NAT. BANK OF McALESTER, OKL.

(Circuit Court of Appeals, Eighth Circuit. December 1, 1916.)

No. 4612.

1. COURTS ⬅493(3)—FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION.

A state court, which by the issuance and levy of an attachment obtained actual possession of property of a defendant, retains jurisdiction over such property to the exclusion of a federal court, which in a suit subsequently commenced appointed receivers for the property of such defendant.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1349–1352; Dec. Dig. ⬅493(3).]

2. RECEIVERS ⬅89—POWERS—AUTHORITY TO EXECUTE—REDELIVERY BOND FOR ATTACHED PROPERTY.

Under an order of a federal court appointing receivers for a defendant corporation, which directed them to take possession of all of its property and to carry on its business, and authorized them to appear and conduct the defense of any suits against it affecting its property or business, where a part of defendant's property necessary to the conduct of its business was then in the possession of a state court under attachments levied thereon, the receivers had authority to become defendants in the suit and to join with the corporation in the execution of a forthcoming bond necessary for the release of the property, conditioned as required by the state statute for the return of the property, if required, or the payment of its appraised value, and on their failure to return the property in compliance with the judgment of the state court the signers became liable on the bond.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 163; Dec. Dig. ⬅89.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action at law by the First National Bank of McAlester, Okl., against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Affirmed.

R. E. Ball, of Kansas City, Mo. (Ball & Ryland, of Kansas City, Mo., on the brief), for plaintiff in error.

James H. Gordon, of McAlester, Okl. (Gordon & McInnis, of McAlester, Okl., on the brief), for defendant in error.

Before SMITH and CARLAND, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. For several years prior to any of the litigation here important the Bolen-Darnall Coal Company, hereafter called the Coal Company, was a Missouri corporation engaged in business in Oklahoma 'and holding and operating coal mines in that and other states. On March 1, 1904, the Coal Company executed to the Fidelity Trust Company, hereafter called the Trust Company, a mortgage upon its real estate in Missouri, Kansas, Arkansas, and Indian Territory, now a part of Oklahoma, "including herein all coal, leased lands and other lands, shafts, mine equipment, machinery, and all other or different species of property now owned or that may be hereafter acquired by the Coal Company," to secure an issue of bonds to the amount of $400,000. This instrument was acknowledged and recorded at South McAlester on June 25, 1904, at 8 o'clock a. m., in Record 28, at page 113. On October 7, 1912, the First National Bank of McAlester, Okl., hereafter called the Bank, brought an attachment suit against the Coal Company upon a note for $10,000 and interest at 10 per cent. from maturity and attorney's fees, in the district court of Pittsburg county, Okl. The writ of attachment was levied that day upon a stock of goods, wares, and merchandise and fixtures of the defendant at North McAlester, and other property there, and the next day was levied upon a stock of goods, wares, and merchandise and fixtures in a store at Craig, Okl., and other property. October 11, 1912, the United States District Court for the Eastern District of Oklahoma, in a suit entitled Russell Hardware Company v. Bolen-Darnell Coal Company, ordered:

"(1) That W. E. Beatty, of McAlester, Okl., and L. S. Mohr, of Kansas City, Mo., be and they hereby are appointed joint receivers of the defendant, Bolen-Darnell Coal Company, and of all the property of said defendant, real, personal, and mixed, of whatever kind and description and wherever situated, including all property owned, leased, or operated by said defendant, and all buildings and appurtenances of every kind, and all equipment, utensils, and tools, machinery, furniture, fixtures, materials, and supplies, and all books of account, records, and other books, papers, and accounts cash in bank or on deposit in hand money, debts, things in action, and all muniments of title, bills receivable, rents, issues, profits, and income accrued, accruing, or to accrue as well as all privileges and franchises, and all assets of every kind and description, belonging to or used by the defendant in its business; that said receivers be and they hereby are authorized and instructed immediately to take possession of said property and business of the defendant, and run, manage, and operate the mines and properties of said defendant in such manner as will, in their judgment, produce most satisfactory results, so that the op-

eration of said defendant's business shall be continued without interruption. * * *

"(3) That said receivers be authorized to institute and prosecute all such suits as may be necessary in their judgment for the proper protection of the property and trust hereby imposed upon them, and likewise to defend all actions instituted against them as receivers, and also to appear in and conduct the prosecution or defense of any suit or suits now pending in any court against the defendant where the interests and rights of such business or the creditors of the defendant are involved."

On October 14, 1912, the receivers voluntarily appeared in the state court in the case of the Bank against the Coal Company, stated they appeared as receivers, that they were authorized to appear and conduct the defense of any suit or suits pending in any court against the Coal Company, that they were necessary parties to said suit, and asked that they be made parties defendant, and be permitted to plead as though parties to the original suit. Later in the same day a forthcoming bond for $30,000 was executed for the benefit of the Bank and delivered to the sheriff in said state court case. In this bond the Coal Company and Beatty and Mohr, its receivers, all principals, and the plaintiff in error, United States Fidelity & Guaranty Company, hereafter called the Guaranty Company, was surety. This bond recited the commencement of the suit by the Bank, the attachment, a stipulation between the parties that the appraised value of the property was $15,000, that upon the application of the receivers of the Coal Company they had that day been made parties defendant in said suit of the Bank against the Coal Company, and the following:

"Whereas, the Bolen-Darnall Coal Company, and the receivers of said company, desire to retain possession of said property until the same shall be required for the purpose of satisfying the judgment in this action: Now, therefore, if the property or its appraised value in money shall be forthcoming to answer the judgment of the court in this action, then this obligation shall be void; otherwise, to remain in full force and effect."

Thereupon the attached property was in fact taken possession of by the receivers. December 14, 1912, the Coal Company and Beatty and Mohr, receivers, filed answer in the state court in the suit by the Bank. On February 19th this cause was tried in the state court to a jury. At the close of the testimony the court directed a verdict for the plaintiff. The jury having returned such verdict, the court rendered judgment against both the Coal Company and its receivers for the amount of the note in suit, attorney's fees, and costs. The court by its judgment found the issuance and levy of the attachment and the giving of the forthcoming bond, and made the following entry:

"It is by the court considered, ordered, and adjudged that the attachment sued out herein be and the same is hereby sustained. It is further ordered and adjudged that the defendants herein redeliver the property so attached to the sheriff of Pittsburg county, Oklahoma, and the said sheriff of Pittsburg county, Oklahoma, is hereby ordered to repossess himself of the said property, or so much thereof as may be found, and to sell the same as provided by law, returning the proceeds of said sale into this court."

On April 8, 1913, the Trust Company brought suit in the United States District Court for the Eastern District of Oklahoma against the Coal Company and its receivers, the Bank and the Russell Hard-

ware Company et al., in equity to foreclose its mortgage heretofore referred to. The bill contained the following allegations:

"(6) Heretofore, upon the 14th of February, 1913, in the district court of Pittsburg county, Okl., the First National Bank of McAlester, Okl., recovered a judgment against the Coal Company for $11,442 and costs; and upon March 11, 1913, the Kincannon Bros., likewise in the same court, obtained a judgment against said Coal Company for $1,700. Each of said judgments is a lien upon the mortgaged property in Oklahoma, but inferior to the lien of said mortgage."

On the same day the suit in which the receivers had been appointed was consolidated with this foreclosure suit and will hereafter be called the consolidated suit. April 28, 1913, having been duly served with a subpœna, the Bank filed an answer in that suit. Many matters were set up in this answer, among others that the defendants in the state court case, because they had sold and disposed of all of the merchandise taken under the writ and a large portion of the other personal property so taken, could return none of the property taken under attachment, and that none of it was subject to the mortgage. There was no cross-petition, and no prayer, except that the defendant be discharged, with its costs. July 15, 1913, the Bank and the sheriff of Pittsburg county, Okl., made first an oral demand upon the receivers to turn over the attached property, and subsequently on the same day served a written demand to the same effect. The receivers refused to comply with either demand. July 22, 1913, this suit was brought in the district court of Pittsburg county, Okl., by the Bank against the Guaranty Company on the forthcoming bond. August 12, 1913, the Guaranty Company filed its petition and bond for removal of the case to the United States District Court for the Eastern District of Oklahoma and on August 19, 1913, it was ordered so removed by the state district court. February 27, 1914, the federal court heard the foreclosure suit and took it under advisement until July 30, 1914, when it entered a decree by which it rendered judgment for the Trust Company for $126,-074.50, with interest from March 1, 1914, and

"The court further finds that attachments were levied upon certain of the personal property of said Coal Company in the state of Oklahoma in favor of the First National Bank of McAlester, Okl., R. L. Kincannon and J. R. Kincannon, partners as Kincannon Bros., Griffin Grocery Company, and McAlester Grocery Company, as set up by the pleadings in this cause, and that the lien of the plaintiff Fidelity Trust Company is paramount to the lien of all said attachments as to all the property included in said mortgage or deed of trust, excepting the stocks of goods, wares, and merchandise kept for sale in the stores or commissaries of said Coal Company attached as aforesaid. The court further finds that said deed of trust is void as to said stocks of goods, wares, and merchandise so kept for sale in said stores or commissaries of the said defendant Coal Company in Oklahoma, as against the claim of said attaching creditors who have levied attachments thereon, and that as to said stocks of goods, wares, and merchandise the claims of said attaching creditors are paramount, and as to this finding the plaintiff Fidelity Trust Company duly reserves an exception."

The court further decreed that, if the Coal Company failed to pay the amount of the judgment, the mortgaged property should be sold by special masters free of any liens or claims of any of the parties to this suit. The decree further provided:

"There is also reserved for further consideration and decision the right of the attaching creditors to participate in the distribution of said funds, to the extent that the rights of the attaching creditors are not herein ascertained and decided. It is further ordered and decreed that this cause is held up for further orders and decrees not herein mentioned as may seem proper to be made, either before or after such sales, and whether in term or in vacation, as may seem proper to this court or the judge thereof."

For aught that appears nothing more was done in that case at the time of the trial of this one. On June 28, 1915, the defendant Guaranty Company filed its second amended answer in this case, in which it pleaded the decree in.the consolidated case. The remaining allegations of this answer will not now be referred to, because they will be considered later in the opinion. June 29, 1915, this case having been tried to a jury, both sides moved for a directed verdict, and the court overruled the defendant's motion and sustained the plaintiff's, and thereupon the jury returned a verdict for the Bank for $14,280.51. Judgment was rendered on the verdict, and the Guaranty Company sued out this writ of error.

There is no conflicting evidence, and, both sides having moved for a directed verdict, the sole question is: Whose motion should have been sustained? The Revised Laws of Oklahoma provide:

"4821. The sheriff shall deliver the property attached to the person in whose possession it was found, upon the execution, by such person, in the presence of the sheriff, of an undertaking to the plaintiff, with one or more sufficient sureties, resident in the county, to the effect that the parties to the same are bound, in double the appraised value thereof, that the property, or its appraised value in money, shall be forthcoming to answer the judgment of the court in the action."

Section 1344 of the Revised Laws of Oklahoma, 1910, provides for a, corporate surety in cases which provide for bonds with one or more sureties. It is stated in the brief of the Guaranty Company that:

"The questions are: (1) Was it competent for the receivers to voluntarily contract away the supervision and control of the federal court over them, and effectually bind themselves to do with this property only as the state court might direct? (2) Could the defendant in error and the sheriff turn over this property to the receivers of the Coal Company estate, of which it was a part, without necessarily consigning it to the jurisdiction of the court charged with administering that estate? (3) Did the federal court in its decree in the consolidated cause have no authority to order the sale of this property by its special masters, instead of ordering that it all be turned over to the sheriff,' and was the defendant in error, on the record offered, unaffected by the disposition directed to be made by that court?"

[1] It must be borne in mind that the attachment suit was started when the federal court had acquired no jurisdiction whatever in relation to the property. No application for a receiver had been made, and no foreclosure suit had been brought. The jurisdiction of the state court over the attached property was then clear. By its levy of the attachment the Bank acquired, under the subsequent holding of the federal court, a first lien upon the two stocks of merchandise and a junior lien upon the balance of the property seized. In Wabash Railroad v. Adelbert College, 208 U. S. 38, 53, 28 Sup. Ct. 182, 187 (52 L. Ed. 379), the court, by Mr. Justice Moody, said:

"We may now consider the question whether the state court had the jurisdiction to render the judgment in the case at bar, as and when it was rendered. When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it. For the purpose of avoiding injustice which otherwise might result, a court during the continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession, or the control of the property. In the courts of the United States this incidental and ancillary jurisdiction exists, although in the subordinate suit there is no jurisdiction arising out of diversity of citizenship or the nature of the controversy. Those principles are of general application, and not peculiar to the relations of the courts of the United States to the courts of the states; they are, however, of special importance with respect to the relations of those courts, which exercise independent jurisdiction in the same territory, often over the same property, persons, and controversies; they are not based upon any supposed superiority of one court over the others, but serve to prevent a conflict over the possession of property, which would be unseemly and subversive of justice, and have been applied by this court in many cases, some of which are cited, sometimes in favor of the jurisdiction of the courts of the states and sometimes in favor of the jurisdiction of the courts of the United States, but always, it is believed, impartially and with a spirit of respect for the just authority of the states of the Union. Hagan v. Lucas, 10 Pet. 400 [9 L. Ed. 470]; Williams v. Benedict, 8 How. 107 [12 L. Ed. 1007]; Wiswall v. Sampson, 14 How. 52 [14 L. Ed. 322]; Peale v. Phipps, 14 How. 368 [14 L. Ed. 459]; Pulliam v. Osborne, 17 How. 471 [15 L. Ed. 154]; Taylor v. Carryl, 20 How. 583 [15 L. Ed. 1028]; Freeman v. Howe, 24 How. 450 [16 L. Ed. 749]; Buck v. Colbath, 3 Wall. 334 [18 L. Ed. 257]; Yonley v. Lavender, 21. Wall. 276 [22 L. Ed. 536]; People's Bank v. Calhoun, 102 U. S. 256 [26 L. Ed. 101]; Barton v. Barbour, 104 U. S. 126 [26 L. Ed. 672]; Krippendorf v. Hyde, 110 U. S. 276 [4 Sup. Ct. 27, 28 L. Ed. 145]; Pacific R. R. of Missouri v. Missouri Pacific Railway, 111 U. S. 505 [4 Sup. Ct. 583, 28 L. Ed. 498]; Covell v. Heyman, 111 U. S. 176 [4 Sup. Ct. 355, 28 L. Ed. 390]; Heidritter v. Elizabeth Oil Cloth Company, 112 U. S. 294 [5 Sup. Ct. 135, 28 L. Ed. 729]; Gumbel v. Pitkin, 124 U. S. 131 [8 Sup. Ct. 379, 31 L. Ed. 374]; Johnson v. Christian, 125 U. S. 642 [8 Sup. Ct. 989, 1135, 31 L. Ed. 820]; Morgan's Co. v. Texas Central Railway, 137 U. S. 171 [11 Sup. Ct. 61, 34 L. Ed. 625]; Porter v. Sabin, 149 U. S. 473 [13 Sup. Ct. 1008, 37 L. Ed. 815]."

In Palmer v. Texas, 212 U. S. 118, 125, 29 Sup. Ct. 230 (53 L. Ed. 435), the court said:

"If a court of competent jurisdiction, federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property has been entirely removed to the territory of another sovereignty. Wabash Railroad v. Adelbert College, 208 U. S. 38, and previous cases in this court cited therein at page 54 [28 Sup. Ct. 182, 52 L. Ed. 379]."

This court has distinctly affirmed the correctness of this doctrine in Western Union Telegraph Co. v. United States & Mexican Trust Co. et al., 137 C. C. A. 113, 121, 221 Fed. 545, 553, and cases there cited.

The state court, having taken actual physical possession of the property levied upon, could hold it even as against the United States District Court. While the property was thus in the custody of the state court, the defendant in the action and its receivers, who had been ex-

pressly authorized by the federal court to appear in and conduct the defense of any suit or suits now pending in any court against the defendant, having appeared in the state court, tendered the bond in suit with the Guaranty Company as surety, and the bond was accepted by the officers of the state court, and the property, which could not have otherwise been obtained by the officers of the federal court until after the decision of the state court case, was turned over to the receivers of the federal court.

[2] It is now contended that the federal court receivers had no authority to give the bond as receivers. It must not be forgotten that this bond was given in the name of the Coal Company as well as its receivers, and the sheriff simply released the property, and the receivers under the authority of the federal court took possession. The first subdivision of the order appointing receivers directed them to take possession of all the attached property as clearly as if it had been specifically described; but we have seen it was in the hands of the state court, and there was only a single way in which the order of the federal court could be complied with, and there is no doubt that an order to take possession of specific property is the equivalent of an order to do all things necessary to obtain possession thereof. The attached property was in the possession of the state court, and it could not be obtained by the federal court until the state court had disposed of the case in which it was held, except by giving a forthcoming bond, which the receivers did.

The federal court having ordered its receivers to take possession of all equipment, tools, material, supplies, and fixtures, and to run, manage, and operate the same in such manner as would be most satisfactory, so that the defendant's business be continued without interruption, and the receivers finding the stocks of goods and merchandise and much of the machinery in the possession of the sheriff, so that no part of the business could be conducted unless the possession could be obtained by the receivers, they were as much authorized to give this bond when it became the only method by which they could take possession as they were to take possession.

Again, that the Coal Company had authority to give the bond cannot be questioned under the Oklahoma statute. The condition of the bond is that:

"If the property or its appraised value in money shall be forthcoming to answer the judgment of the court in this action, then this obligation shall be void; otherwise, to remain in full force and effect."

This bond was expressly a joint and several one. The authority of the receivers to defend this particular suit in the state court was clearly conferred by the third subdivision of their order of appointment, and the authority to defend necessarily includes the authority to give this bond; but, even if the court should be mistaken in this, the bond did not provide that the Coal Company and the receivers would return the property, but that it would be returned by some one to answer the judgment. The bond was in substantial compliance with the Oklahoma statute, and that is all that is necessary to make of it a valid statutory

bond. 4 Cyc. 680. But, if for any reason it was not valid as a statutory bond, it was valid as a common-law obligation. Id. 681.

The whole contention that the Coal Company and its receivers tendered to the sheriff a bond with the Guaranty Company as surety that the property would be returned under a penalty of $30,000, and now say that the bank must have known the receivers must obey the federal court, and the surety is not liable for the penalty, savors of fraud, and cannot be sustained by this court. The receivers obtained the stocks of merchandise upon which the attachment was a first lien, and have disposed of them. They obtained a considerable quantity of other property, including machinery and live stock, necessary to run the mine, and upon which the Bank had a junior lien, and none of it has been returned.

There is no doubt that the judgment of the court below was correct, and it is affirmed.

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes